New Deemer Mfg. Co. et al. v. Alexander et al.

[85 South.   104, In Banc.   No. 21189.]

1. Master and Servant. *Duty in operating steam log skidder defined.*
   A manster operating machinery by the use of the dangerous agency
   of steam, which machinery is placed upon tracks and used for
   pulling logs from the forest, must use such reasonable precaution
   for the safety of servants as a reasonably prudent man would
   exercise for the safety of employees, and where an employee is
   killed by the negligence of a foreman operating a skidder from
   attaching the guy wires to a tree known to experienced wood-
   men to be unsafe for that purpose, and after so attaching said
   wires uses such power in a negligent manner by the use of undue
   force, and as a result pulls the tree from the ground letting it
   fall on an employee placed within the zone of danger by the
   foreman to do work necessary to the operation of the skidder,
   the master is liable.

2. Master and Servant. *Employee working around steam log skidder
   on track held within statute limiting fellow-servant doctrine.*
   An employee working around a skidder, placed on a track and
   operated by steam, and whose work is necessary to the operation
   of the engine and who is subject to the foreman of the skidder
   crew is protected by the provisions of chapter 194, Laws 1908
   (section 6684, Hemingway's Code), and does not come within
   the fellow-servant doctrine of the common law. *Hunter* v. *In-
   gram-Day Lumber Co.*, 110 Miss. 144, 70 So. 901; *Ellis* v. *Bear
   Creek Mill Co.*, 117 Miss. 742, 78 So. 706; *J. J. Newman Lumber
   Co.* v. *Irving*, 118 Miss. 59, 79 So. 2—cited.

3. Death. *Instruction on damages held erroneous.*
   In a suit for damages for the death of a person, based upon chapter
   214, Lews 1914 (section 501, Hemingway's Code), who was in-
   stantly killed and whose sole earnings were his wages, it was
   reversible error to instruct the jury that in assessing the
   damages for the complainant they would allow the present value
   of the entire earnings of deceased during his expectancy, and,
   in addition thereto, the present value of the amount he would
   have expended for support of his children during minority, and,
   in addition thereto, the present value of such amount as deceased
   would have expended for the support of his wife during her life-
   time or expectancy, and, in addition thereto, such amount as
   would be reasonable compensation for the loss of the society,

protection, and companionship of the deceased to his wife and children.

4. DEATH. *Measure of damages defined.*
　　In actions against a master for the wrongful death of a servant, in the absence of facts warranting punitive damages, the measure of damages is the present value of the expectancy of the deceased measured by his earning capacity, plus reasonable compensation for pain and suffering, if any, plus the value of companionship, protection, and society to those suing, and, where he has property or income independent of his earnings, the reasonable value of such gifts as he has been in the habit of bestowing upon his family. It is compensation for the death to those entitled to sue that the law intends to award in the absence of elements of punitive damages.

　　STEVENS and COOK, J. J., dissenting.

APPEAL from circuit court of Neshoba county.
HON. A. J. MCLAURIN, Judge.

Action by Mrs. Ida Mae Alexander and others against the New Deemer Manufacturing Company and others for wrongful death of her husband. Judgment for plaintiffs, and defendants appeal. Affirmed in part, and reversed and remanded in part.

*Watkins & Watkins, Roger Wilson* and *Amos & Dunn,* for appellant.

A peremptory instruction should have been given for appellants by the court below. There is no evidence showing or tending to show that the appellants knew or had reason to believe that the tree would fall.

In 4 Labatt, sec. 919, the rule is announced as follows: "All that can be required of the master is that he shall use due and reasonable diligence in providing safe and sound machinery, and in the selection of fellow servants of competent skill and prudence, so as to make it reasonably probable that injury will not occur in the exercise of the employment. The master is not bound to see that his instrumentalities are absolutely safe and

suitable, or perfectly safe; nor is he bound to see that in every event his instrumentalities are in safe condition, nor to see that they are as safe as human skill and foresight can make them. So far as there is any guaranty on his part, it is merely that due care shall be exercised in furnishing and maintaining the instrumentalities. The master is not bound to guarantee his servants against even extraordinary risks, as in case where the servant is ordered to do something outside of the scope of his regular employment." *Kent* v. *Y. & M. V. R. R. Co.,* 77 Miss. 494; *Railroad Co.* v. *Elliott,* 149 U. S. 266, 271; 2 Bailey on Pers. Injs., sec. 2639; *Railway Co.* v. *Toy,* 33 A. R. 57; s. c. 91 Ill. 474; 3 Elliott on Railroads, sec. 1278."

In the case of *Ill. Cen. R. R. Co.* v. *Wolley,* 77 Miss. 927, this court used the following language: "The rule of duty of a master to his servant is not so strict as his duty to the public who hire his services for transportation. He is held only to reasonable care in furnishing his servants with safe ways, appliances and machinery, and in an action for damages, the servant is held to make it clear that the negligence of the master was the proximate cause. Nor is a railway company bound to furnish its employees with an absolutely safe track, the requirement being that it shall be reasonably careful in keeping it in safe condition. 14 Am. & Eng. Ency. L., 879." *Hope* v. *R. R. Co.,* 98 Miss. 822; 2 Labatt, Master and Servant, sec. 832, 20 Am. and Eng. Ency. Law, 86-92; 26 Cyc., 1410 to 1417, inclusive, and 1444 et seq.; 4 Thompson on Negligence, sec. 3864, et seq.; *A. & V. R. R. Co.* v. *White,* 106 Miss. 141; *R. R. Co.* v. *Bennett,* 111 Miss. 163; *Seiber Lumber Co.* v. *Urquhart,* 79 So. 235, 118 Miss. —.

Point Number Two. If there was any negligence at all attributable on the fastening of the guy wire to the pin oak tree, the negligence was that of the fellow servant of the decedent in carrying out details of the

work which the master could not be expected to super-intend.

The direct question was presented before this court in the case of *I. C. Railroad* v. *Jones,* 16 So. 300. In that case an accident happened because the engine slip-ped on account of the track being wet. The master had supplied sand to be used for the purpose of overcoming the slippery condition of the track but a fellow servant of the plaintiff had failed to apply the same. The court held that the injury grew out the failure of a fellow servant to carry out a mere detail of the work, for which the master was not liable. See Har. Dig. Ry. Dec., p. 59; 4 Labatt, pages 4542, 4553, 4564, 4590. In volume 4, Mr. Labatt cites a large number of cases under note 1; *Bjbjian* v. *Weensocket Rubber Co.* (1895), 164 Mass. 214, 41 N. E. 265; *Wosbigian* v. *Washburn & M. Mfg. Co.* (1896), 167 Mass. 20, 44 N. E. 1058; See sec. 1543, Note 1, subd. (b) *ante; Frazee* v. *Stott* (1899), 120 Mich. 624, 79 N. W. 896; *McQueen* v. *Delaware L. & W. R. R. Co.* (1905), 102 App. Div. 195, 92 N. Y. Supp. 585; *Standard Pottery Co.* v. *Moudy* (1905), 35 Ind. App. 427, 73 N. E. 188; *Kliegel* v. *Weisel & V. Mfg. Co.* (1893), 84 Wis. 148, 53 N. W. 119; *New Pittsburgh Coal & Coke Co.* v. *Peterson* (1896), 14 Ind. App. 634, 43 N. E. 270; *Harneis* v. *Cutting,* (1899), 174 Mass. 398, 54 N. E. 842; *Howard* v. *Hood* (1892), 155 Mass. 391, 29 N. E. 630; *Ryan* v. *Smith* (1898), 29 C. C. A. 427, 56 U. S. App. 604, 85 Fed. 758; *Burns* v. *Sennett* (1896 Cal.), 44 Pac. 1068; 99 Cal. 363, 33 Pac. 916; *McKinnon* v. *Norcross* (1889), 148 Mass. 533; 3 L. R. A. 320, 20 N. E. 183; *Kelly* v. *Jutte & F. Co.* (1900), 4 C. C. A. 274, 104 Fed. 955; *McGinty* v. *Athol Reservoir Co.* (1892), 155 Mass. 183, 29 N. E. 510; and see *Fraser* v. *Blanchard & Crowley* (1909), 83 Vt. 136, 73 Atl. 997; *Marvin* v. *Muller,* (1881, 25 Hun, 163; *Kennedy* v. *Jackson & Agri. Iron Works,* (1895), 1 Misc. 336, 33 N. Y. Supp. 630; *Jenkinson* v. *Carlin* (1894), 10 Misc. 22, 30 N. Y. Supp. 530; *Court-*

*ney* v. *Cornell* (1883), 17 Jones & S. 286; *Neilson* v. *Gilber* (1885), 69 Iowa, 691, 23 N. W. 666; *Peschel* v. *Chicago & M. & St. P. R. Co.* (1885), 62 Wis. 338, 11 N. W. 269; *Faber* v. *Carlisle Mfg. Co.* (1889), 126 Pa. 387, 17 Atl. 621; *Smith* v. *Lowell Mfg. Co.* (1878), 124 Mass. 114; *Ulrich* v. *New York C. & H. R. Co.* (1898), 25 App. Div. 465, 51 N. Y. Supp. 5; *Prescott* v. *Ball Engine Co.* (1896), 176 Pa. 459, 53 Am. St. Rep. 683, 35 Atl. 224; *Trimble* v. *Whitin Mach. Works* (1898), 172 Mass. 150, 51 N. E. 463; *Cunningham* v. *Ft. Pitt Bridge Works* (1901), 197 Pa. 621, 47 Atl. 486; *Liermann* v. *Milwaukee Dry Dock Co.* (1901), 110 Wis. 599, 86 N. W. 182; *The Islands* (1886), 28 Fed. 478; *Hudson* v. *Ocean S. S. Co.* (1888) 110 N. Y. 625, 17 N. E. 342; *McCampbell* v. *Cunard S. S. Co.* (1895), 144 N. Y. 552, 39 N. E. 637; *Divver* v. *Hall* (1897), 21 Misc. 452, 47 N. Y. Supp. 630, reversing (1897), 20 Misc. 677, 46 N. Y. Supp. 533; *Conway* v. *New York C. & H. R. R. Co.* (1895), 13 Misc. 53, 34 N. Y. Supp. 113, reversing (1895) 11 Misc. 641, 32 N. Y. Supp. 921; *O'Connor* v. *Hall* (1900), 52 App. Div. 428, 65 N. Y. Supp. 136; *Hogan* v. *Smith* (1891), 125 N. Y. 774, 26 N. E. 742; *Keystone Bridge Co.* v. *Newberry* (1881), 96 Pa. 246, 42 Am. Rep. 543; *Shanke* v. *United States Heater Co.* (1900), 125 Mich. 346, 84 N. W. 283; *Tricka* v. *Burlington C. R. & N. R. Co.* (1896), 100 Iowa, 205, 69 N. W. 422; *Quinn* v. *Fish* (1893), 6 Misc. 105, 26 N. Y. Supp. 10; *Balleng* v. *New York & C. Mail S. S. Co.* (1899), 28 Misc. 238, 58 N. Y. Supp. 1074; *Manning* v. *Manchester Mills* (1900), 70 N. H. 582, 49 Atl. 9; *Warszawski* v. *McWilliams* (1901), 64 App. Div. 63, 71 N. W. Supp. 680; *Gleason* v. *Smith* (1898), 172 Mass. 50, 51 N. E. 460; *Cybur Lumber Company* v. *Erkhart*, 79 So. 235; *Cybur Lumber Company* v. *Erkhart*, 238 Fed. 751; *Moss* v. *Compress Co.*, 202 Fed. 657, 121 C. C. A. 67; *Legrone* v. *Railroad Co.*, 67 Miss. 592; *New Orleans R. R. Co.* v. *Hughes*, 49 Miss. 258; *Railroad Co.* v. *Thomas*, 51 Miss.

637; *McMaster* v. *Railroad*, 65 Miss. 264; *Millsaps* v. *Railroad Co.*, 69 Miss. 423; *Illinois Central R. R. Co.* v. *Bishop*, 76 Miss. 810.; *Bradford Construction Co.* v. *Heflin*, 88 Miss. 314; *Railroad Company* v. *Ford*, 108 Miss. 616; *Hunter* v. *Ingram-Day Lumber Co.*, 110 Miss. 744; *Ellis* v. *Bear Creek Milling Co.*, 117 Miss. 742; *Newman Lumber Co.* v. *Irvin*, 118 Miss. 59; *Hunter* v. *Ingram-Day Lbr. Co.*, 110 Miss. 745, 70 So. 901; *Railroad Co.* v. *Pontius*, 157 U. S. 209, 15 Sup. Ct. 585, 30 L. Ed. 675; *Ballard* v. *Oil Company*, 81 Miss. 507.; *Missouri R. R. Co.* v. *Mackey*, 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107; *Ellis' case*, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666; *McGun case*, 160 U. S. 293, 18 Sup. Ct. 594, 42 L. Ed. 1037; *St. Louis, etc.,* v. *Paul*, 173 U. S. 404, 19 Sup. Ct. 419, L. Ed. 746; *Bradford Construction Co.* v. *Heflin*, 98 Miss. 314; *Railroad* v. *Pontius*, 157 U. S. 209, 39 L. Ed. 675; *Tullis* v. *Railroad Co.*, 175 U. S. 348, 44 L. Ed. 192.

Point Three. The Measure of Damages. We will not repeat the argument made in the very excellent brief of Messrs. Amis and Dunn in this case upon the question of the error committed by the court in instructing the jury, at the request of the appellees, upon the measure of damages. We approve of the argument in its entirety. The giving of such instruction doubtless appears in the excessive verdict which was rendered in that case, and it is to this question that we desire to direct the attention of the court. A verdict was rendered in this case in favor of the appellees for twenty thousand dollars, and we desire to submit to the court that the verdict was grossly excessive. The evidence is undisputed in the case that the decedent was twenty-eight years of age; he was what is known as an unskilled workman; he was getting one dollar and seventy-five cents per day, or forty-two dollars per month, or five hundred and four dollars per annum. Upon such basis of earning, if he had lived his entire expectancy, he

would have earned seventeen thousand one hundred and forty-four dollars; that is to say, if he had lived his entire expectancy and worked every minute of the time. We respectfully submit that the recovery was grossly excessive.

It will be noted in the case that the decedent was killed instantly, and therefore, suffered no pain which could be taken as an element of damage. The high water mark was reached in this court in the case of *Kress & Co.* v. *Markline,* 117 Miss. 37. The syllabus on the question of damages is as follows: ''A verdict for twenty-five thousand dollars to the widow and four minor children for the death of a healthy husband and father, with an expectancy of twenty-four and a half years, who earned eight hundred dollars per year, and who suffered severely for twenty hours after falling into an elevator shaft was not excessive.''

The court in that case realized and admitted that a very large verdict was rendered. The court said: ''It is impossible for this court to measure in dollars and cents the pain and suffering endured by the deceased in the eighteen or twenty hours that he lived. Entertaining these views, the case is therefore affirmed.''

We now propose to take the authorities and demonstrate to the court that nowhere in this country has any such recovery been justified under similar circumstances, in the absence of punitive damages, for pain and suffering on the part of the decedent; that the highest verdict permitted to stand for an unskilled laborer was fifteen thousand dollars and in one case the decedent was getting ten dollars and forty cents per day.

In the following cases of death of unskilled laborers, the damages assessed on appeal were held to be excessive, and as a condition of avoiding a new trial, were reduced as indicated. seventeen thousand dollars reduced to ten thousand dollars, thirty-three years of age, an unskilled workman earning two dollars and seventy-

five cents per day. *Graham* v. *Allen & N. Mill Co.*, 78 Wash. 589, 13 Pac. 591.

Fifteen thousand dollars reduced to ten thousand dollars; common laborer, twenty-seven years of age; left surviving a widow, twenty-two years of age and an infant child. *Sorensen* v. *Seiden-Breck Constr. Co.*, 98 Neb. 689, 154 N. W. 222.

Thirteen thousand five hundred dollars reduced to eight thousand dollars; workman in a shipyard, forty-eight years old; earned three dollars and fifty cents per day; had once abandoned his family for a time, and had again left home some time prior to the accident causing death; beneficiaries, widow and minor children. *Creamer* v. *Moran Bros. Co.*, 41 Wash. 646, 84 Pac. 592.

Ten thousand dollars reduced to seven thousand, five hundred dollars; fifty-three years old; in good health; earned two dollars and fifty cents per day; loss to family. *Taylor* v. *Long Island R. R. Co.*, 16 App. Div. 1, 44 N. Y. Supp 820, 2 Am. Neg. Rep. 608.

—— reduced to three thousand dollars; damage to parents, aged, respectively sixty-eight and fifty-eight years, for death of thirty-year-old son; earned three dollars per day; no evidence that he ever contributed to parents' support. *Christensen* v. *Firoiston Pulp & Paper Co.*, 29 Nev. 552, 92 Pac. 210.

Eight thousand six hundred dollars reduced to five thousand dollars; damage to widow and two minor children; father a laboring man, forty-one years old; healthy, strong and efficient in his work, and earning thirty-seven dollars and fifty cents per month. *Trinity Valley R. Co.* v. *Steward* (Tex. Civ. App.), 62 S. W. 1085.

Eight thousand five hundred dollars reduced to six thousand dollars; common laborer; thirty-two years of age; earned from four hundred and twenty-five dollars to one thousand dollars per year; survived by widow and three children, four, six and nine years of age.

*Sadowski* v. *Thomas Furnace Co.*, — Wis. —, 151 N. W. 797; See same case prior appeal, 157 Wis. 443, 146 N. W. 770.

Eight thousand dollars reduced to five thousand dollars; unmarried laboring man twenty-three years of age; survived injury seven months; damages included pain and suffering, as well as loss through death. *Welch* v. *Maine,* 86 Me. 552, 25 L. R. A. 658, 30 Atl. 116; 15 Am. Neg. Cas. 328.

Seven thousand dollars reduced to five thousand dollars; street sweeper; next of kin not shown. *O'Connor* v. *Union R. Co.,* 67 App. Div. 99, 73 N. Y. Supp. 606.

Seven thousand dollars reduced to five thousand dollars; damages to widow and two sons, aged respective twelve and twenty years; husband and father a laborer, fifty-six years of age; in good health, and earning from twelve dollars to fifteen dollars per week. *Springfield Elec. L. & P. Co.* v. *Calvert,* 134 Ill. App. 285; Affirmed 231 Ill. 290, 14 L. R. A. (N. S.) 782, 83 N. E. 184, 12 Ann. Cas. 423.

Six thousand dollars reduced to four thousand seven hundred and fifty dollars; damages to widow; husband a laboring man, fifty one years of age; earning from one dollars and seventy-five cents to two dollars and twenty-five cents per day. *West* v. *Bayfield Mill Co.,* 149 Wis. 145, 135 N. W. 478.

Six thousand dollars reduced to three thousand dollars; damage to mother sixty-one years old; unmarried son thirty-eight years old; laborer in a boiler shop; earned thirty dollars per month; contributed it to the support of his mother, a little son and two grandchildren, except a small amount he retained to buy his clothing. *Mexican Nat. R. Co.* v. *Finch,* 8 Tex. Civ. App. 816, 27 S. W. 1028.

Five thousand five hundred dollars reduced to four thousand dollars; damages to wife fifty-two years of age, husband sixty-two years old, a laboring man, earning on

an average not to exceed seven hundred and twenty dollars per year. *Secord* v. *Schroeder Lbr. Co.*, 160 Wis. L. 150, N. W. 971.

Five thousand three hundred forty-one dollars and sixty cents (one thousand dollars for the mental anguish and the balance for the loss of support); reduced to two thousand five hundred dollars; damages to mother; deceased about twenty-five years of age; raftsman, earning about one dollar and seventy-five cents per day, a good worker, but in the habit of becoming occasionally intoxicated. *Roberts* v. *La. R. & Nav. Co.*, 132 La. 446, 61 So. 522.

Five thousand two hundred dollars reduced to four thousand dollars; track walker, earning one dollar and twenty-five cents per day. *Erie R. Co.* v. *McCormick*, 24 O. C. C. 86.

Five thousand seventy-seven dollars and thirty-eight cents reduced to three thousand four hundred three dollars; common laborer, forty-nine years of age, earning forty-two dollars per month; contributed thirty dollars per month to the support of wife. *Little* v. *Bousfield & Co.*, 165 Mich. 654, 131 N. W. 63.

Five thousand dollars reduced to three thousand five hundred dollars; damage to widow; husband a laborer, sixty-five years of age; earning twelve dollars and fifty cents per week and leaving to survive him a widow, but no children. *Swanson* v. *Union Stock Yards Co.*, 89 Neb. 361, 31 N. W. 594.

——————————, reduced to three thousand dollars; strong, able bodied; forty-nine years of age; a steady worker; the sole support of his wife; no children; not shown to have accumulated any property. *Belstener* v. *Summer* 157, Wis. 556, 147 N. W. 1072.

——————————, reduced to two thousand five hundred dollars; railroad employee; nearest of kin, brothers and sisters with whom he lived on a farm, but whom

he was under no obligation to support. *Husted* v. *Mo. P. R. Co.*, 143 Mo. App. 623, 128 S. W. 282.

Four thousand six hundred twenty-five dollars reduced to three thousand dollars; damage to widow; husband common laborer, fifty-nine years of age, and earning about four thousand dollars per year. *Gillett* v. *Flanner-Steger Land & Lbr. Co.*, 159 Wis. 578, 150 N. W. 987.

Three thousand five hundred dollars reduced to two thousand five hundred dollars; pecuniary loss to father, fifty-seven years of age; son twenty-seven years of age; common laboring man earning one dollar and fifty cents per day; sent father twenty to twenty-five dollars per month, and sometimes less. *Hirschkowitz* v. *Penn. R. Co.*, 108 Fed. 438.

Three thousand dollars reduced to fifteen hundred dollars; damages to mother, fifty-four years old; death of unmarried son, a coal passer; lived with her, and paid her five dollars per week for his board, and washing and mending; mother and six other sons, ranging in age from twelve to twenty-two years. *Innes* v. *Milwaukee*, 103 Wis. 582, 79 N. W. 783.

Two thousand one hundred dollars reduced to five hundred dollars; damages to father from the death of his twenty-two year old son; highest wages thirty-five dollars per month; had contributed small amounts to his father, though he did not live with him; had also promised to give material assistance in paying off certain debts owing by the father. *Stephens* v. *Toronto R. Co.*, 11 Ont. L. Rep. 19.

One thousand eight hundred and eighty dollars reduced to one thousand dollars; young unmarried man; laborer; at times living away from the home of his parents; only occasionally contributing to the support of parents, and then in provisions and small sums of money, except that he had been in the habit of paying twenty-four dollars per year interest on a mortgage covering

property in the name of his mother. *Rombough* v. *Balch,* 27 Ont. App. Rep. 32.

Sixteen hundred dollars reduced to seven hundred and fifty dollars; damage to wife and children; husband and father a laboring man, seventy-three years of age, and earning two hundred dollars to two hundred and twenty-five dollars per year. *Conley* v. *Maine C. R. Co.,* 95 Me. 149, 49 Atl. 668.

In the following cases of death of unskilled laborers, the damages assessed was held to be excessive, and the verdict set aside without any option to avoid a new trial by accepting a reduction.

Thirty thousand dollars damage to widow; husband an ordinary laborer forty-two years of age, had not earned at any one time to exceed fifty dollars per month, and at the time of his death, was working in a saloon for thirty dollars per month. *Anderson* v. *Nor. Pac. R. Co.,* 19 Wash. 340, 53 Pac. 345, 4 Am. Neg. Rep. 235.

Ten thousand dollars, laborer thirty years old, earning three dollars per day; next of kin were parents, in whose behalf the suit was brought; it did not appear that he contributed anything to them, or that they were in need of assistance, and neither his life expectancy nor that of parents was shown, except evidence as to their ages. *Christensen* v. *Floriston Pulp & Paper Co.,* 29 Nev. 552, 92 Pac. 210.

Nine thousand dollars, damage to parents; laborer twenty-one years old; no evidence as to amount of earnings of deceased, or his pecuniary circumstances although such evidence was easily accessible. *Houston & T. C. R. Co.* v. *Cowser,* 57 Tex. 293.

Seven thousand and five hundred dollars damage to widow and three minor children; husband and father a common laborer, thirty-two years old, and earning about one dollar and seventy-five cents per day. *Sadowski* v. *Thomas Furnace Co.,* 157 Wis. 443, 146 N. W. 770.

Five thousand dollars, unmarried laboring man, twen-

ty-four years old, earning not to exceed twelve dollars per week; contributed to his nearest of kin, his mother and sister, not to exceed three hundred dollars per year; two hundred dollars to mother and one hundred dollars to sister; not living with them; nor showing that these relatives were dependent upon him, or as to the number of years he had been contributing to their support; holding influenced by an instruction of the court that might have been construed by jury to authorize the inclusion as an element of damages, the injury to the feelings of deceased. *Shields* v. *J. H. Dole Co.,* 168 Ill. App. 362.

————, farm laborer, fifty years old, earning ten dollars per week during the three months immediately preceding his death, had contributed only forty dollars to support of his family; children all married except four, whose respective ages were fourteen, twenty, twenty-two and twenty-four years. *Settlemeyer* v. *Public Service R. Co.,* (N. J. L.), 73 Atl. 50.

Five thousand dollars, statutory, maximum; no evidence as to earning capacity; wife and minor children dependent upon him, whom he apparently supported. *Ill. Cent. R. Co.* v. *Weldon,* 52 Ill. 290.

————, beneficiaries were parents of the deceased, to whom he sent from fifteen dollars to twenty dollars per month; had accumulated nothing; was earning three dollars and fifty cents per day; life expectancy forty years. *Reiter-Connoll Mfg. Co.* v. *Hamlin,* 144 Ala. 192, 40 So. 280.

Two thousand and five hundred dollars; damage to wife; husband earning three hundred dollars per year all of which he expended for the support of himself and wife. *Louisvillle & N. R. Co.* v. *Trammell,* 93 Ala. 350, 9 So. 870.

In the following cases of the death of persons following the occupation indicated, the damages assessed were held to be excessive, and the judgment was set aside

without any option to accept a smaller amount as a condition of avoiding a new trial.

Seventeen thousand dollars; about thirty years old, living with and aiding his father in his occupation as architect; services to the father were worth from four thousand dollars to seven thousand dollars per year. *Scofield* v. *Pennsylvania Co.,* 149 Fed. 601, 88 C. C. A. 602, 161 Fed. 911.

Twelve thousand dollars; station agent; fifty-seven years old; in declining health and suffering from partial paralysis, because of which the amount of his earnings had been reduced to twenty-five dollars per month. *L. & N. R. Co.* v. *Staker,* 86 Tenn. 343, 6 Am. St. Rep. 840, 6 S. W. 737.

Nine thousand dollars; damage to wife; husband eighty years old; in vigorous health; a minister of the gospel; salary about six hundred dollars per year; a portion of which he devoted to his wife. *Florida C. & P. R. Co.* v. *Foxworth,* 45 Fla. 278, 34 So. 270.

———, damage to parents; son over twenty-one years of age; had the control of a lumber business; contributed two-thirds of his wages to the support of parents and their minor child; also, worked for his father; was of good moral character, steady, never drank, had a good education and was energetic in his habits. *Houston & T. C. R. Co.* v. *Cowser,* 57 Tex. 293.

Eight thousand dollars; damage to wife and an unmarried adult daughter; husband and father, sixty-nine years of age; earning about one hundred dollars per month as an expert accountant; the action of the trial court in granting a new trial because of the damages were excessive, sustained. *Harrison* v. *Sutter Street R. Co.,* 116 Cal. 156, 47 Pac. 1019, 1 Am. Neg. Rep. 403.

Seven thousand dollars; watchman, forty-seven years of age; not earning over ten dollars per week; left dependent wife, forty years of age, and two children, re-

spectively, eighteen and fourteen years of age. *Geiger* v. *Worthen and A. Co.*, 66 N. J. L. 576, 49 Atl. 918.

Five thousand dollars; watchman, earned about forty-five dollars per month; wife and children surviving; deceased did not live with or maintain family and they were not dependent upon him. *Chicago R. I. & P. R. Co.* v. *Downey,* 96 Ill. App. 398.

————, shoemaker, sixty-five years of age, in fair health; survived by wife and seven children, the youngest of whom was a daughter nineteen years old. *Chicago B. & Q. Co.* v. *Gunderson,* 65 Ill. App. 638.

Five thousand dollars; wife and three children dependent upon deceased; for two weeks out of seven, in which the family had lived in the city; deceased had made six dollars per day as a bricklayer; this was the only evidence on the question of earning. *Keepsch* v. *Donald,* 4 Wash. 436, 31 Am. St. Rep. 936, 30 Pac. 991.

Four thousand dollars; employee of a bank sixty-eight years of age; prior accumulation amounted to six thousand four hundred dollars annual income from personal exertions after deducting personal expenses about one thousand dollars; statutory beneficiary was an adult child, whose pecuniary loss was the diminution of the estate of the decedent. *Denver & R. G. R. Co.* v. *Spencer,* 27 Colo. 313, 51 L. R. A. 125, 61 Pac. 606.

We respectfully submit that the verdict in the case was grossly excessive; that the appellees recovered thirty-six years in advance of decedent's death every dollar which he could possibly have earned, if he had lived his alloted time for life.

We respectfully submit that the case should be reversed and remanded.

*Amis & Dunn,* for appellant.

We have no fault to find with the gentlemen of damages enumerated, but the method by which the jury

were instructed to compute the items which would lead to the ultimate sum in aggregate to be returned as reasonable compensation to the plaintiffs, is repugnant to the simplest rules of reason. Following the order of itimization adopted by the instruction, it will be found that the jury were told: First, to find the present value of the amount Mr. Alexander would have earned during the remainder of his life had he not lost his life in the manner shown. Second, add to the present value of the amount Mr. Alexander would have earned, the present value of any support he would have given to his children (plaintiffs) until they reached their majority. Third, add to the first and second items, above mentioned such amount as would be reasonable compensation (for loss) for the present value of any amounts which Mr. Alexander would have given for the support of his wife (plaintiff) during the remainder of his life, provided she would have lived as long as he did. Fourth, then add to the first, second, and third items such amount as would reasonably compensate the wife and children for the loss of the companionship, protection and society of the husband and father.

The first item states correctly enough an element of damages to be considered, but it fails to furnish the correct rule by which the jury are to be guided in ascertaining the amount to be fixed as compensation for the element mentioned. For perfectly obvious reasons the words "present value" as used in the instruction should have been qualified by the word "net" or by the use of the term "present net value" instead of "present value." If full effect be given to that sentence in the instruction we are now concerned with, there is no escape from the conclusion that it was not intended that the present net value of the deceased's earnings should be the amount fixed as compensation for this element of damages. On the contrary the present gross value of Alexander's earnings was fixed as the basis of the

amount to be returned, the words employed are "such amount as the jury may believe from the evidence is the present value of the amount James Clarence Alexander would have earned, if any, during the remainder of his life." This required the jury to take the amount Mr. Alexander would have earned, during the remainder of his life, and find the present value of such amount and return that sum as the amount of compensation for this element of damages. Under such rule no account is to be taken of the cost of self-support and the discharge of other known legal obligations such as support of the wife and children, or other legal dependents which of course must be deducted from the gross earnings of the deceased in every case.

To hold that the ascertained present value of the gross earnings of the deceased should be the amount fixed as compensation for the pecuniary loss to the plaintiff in such case would be equivalent to saying that the deceased was more valuable being dead than if he were living. Yet this exact result was necessarily reached in this case if the jury followed the instruction here complained of. The supreme court of Alabama in the case of *McAdory* v. *L. & N. R. R. Co.*, 10 So. 508, clearly states the elements which are to be considered in determining the pecuniary value of the life lost. *Railway Co.* v. *Crowser*, 57 Tex. 293.

The vice of the first paragraph of the instruction is augmented by the second and third paragraphs. By the first paragraph the jury was told to fix the amount for the element of damages mentioned at the present value of the amount Mr. Alexander would have earned during the remainder of his life. By the second and third paragraphs they were authorized and directed to find the present value of the amount which the deceased would have given his children until they reached their majority, and to his wife from her support during the remainder of his natural life, and to all these sums

or amounts so ascertained to the gross amount of the present value of the deceased's earnings for life. The idea of the entire instruction seems to be that since the elements of damages referred to are to be taken into consideration, under our statute, that the one may be added to the other and that the sums produced by each, altogether should constitute the measure of compensation to be recovered. That the statute does not contemplate any such result is too plain for argument. This court has never so construed the statute so far as we are advised but if there is a decision which so holds we respectfully submit that it is unsound and should be overruled. Certainly no rule of compensation for pecuniary loss can be sustained upon reason; which undertakes to pay more than the actual loss amounts to. The utmost the plaintiffs in this case were entitled to, aside from compensation for loss of companionship, society and protection of the husband and father, was the present value of the amount which the deceased would have contributed to their support plus anything this estate might have been worth at his death had he lived out his full natural life. Certainly the amount of his estate at the end of his life would have been diminished to the extent of what he had contributed to the support of his wife and children, plus his own support. Yet these perfectly obvious considerations are utterly ignored by this instruction, and moreover, still further the jury is told to find the sum of each and add them all together and return said amount as then the measure of damages to be awarded for these three elements the loss of which is to be compensated for. That the ultimate net value of a man's earnings for life is to be determined by what he earns and what he has to spend is borne out by judicial decision, by reason, and by human experience and we frankly say that if the instruction in question does not do violence to all these, and even

other rational forces, then we are utterly unable to understand the English language.

We have examined all of the reported cases, so far as our research has discovered, decided by this court in construing the statute under which this suit was brought. We have found no case which will support the instruction complained of. Indeed there is none.

The verdict was for twenty thousand dollars and since the jury were improperly instructed as to the measure of damages, we submit that the judgment should be reversed. We respectfully submit that the court cannot determine on this record that the errors pointed out in the instruction are not responsible for the enormous amount returned by the jury. This court in the case of *I. C. R. R. Co.* v. *Fuller,* 63 So. 267, in the course of the opinion said: "In the present case, it is shown that the decedent, had he lived his full expectancy, would hardly have earned more than two thousand dollars. The verdict in favor of the surviving children (naming them) is for ten thousand dollars, therefore we may conclude that there is eight thousand dollars that is for some other than actual damages, consisting of his expected earnings. The jury may have awarded this difference, or a part thereof, as damage for pain and suffering. We cannot, therefore say in this case that the giving of the instruction had no prejudicial effect on appellant's case, and we believe it should have been refused."

It cannot be determined how much the jury found was the proper amount to be returned for each of the four elements of damage submitted to it in this case, but the presumption must be indulged that the jury did try to follow the instruction and in so doing inevitably it would have and did arrive at the wrong amount.

We, therefore, insist that the judgment of the lower court should be reversed.

*Richardson & Dees* and *Marion W. Reily,* for appellee.

We feel that it is a waste of time to argue that a peremptory instruction should not have been given to the defendants in view of the facts. Certainly the defendant corporation cannot place a crew of men in charge of an agent and vest that agent with discretion as to the manner and method of performing labor and with the control the management of a department of an enterprise, and reap the benefits derived from such outfit, and then deny the authority of that agent to bind them. Alexander knew nothing of the hazards incident to working near the skidder machinery. He had a right to rely upon the superior judgment of the master. See *Brooks* v. *Desoto Oil Mills,* 57 So. 228; See *Benton* v. *Finkbine Lumber Company,* 79 So. 346. It was the nondelegable duty of the defendant to furnish the plaintiff with a reasonably safe place to work. *Edwards* v. *Haines-Walker Lumber Co.,* 74 So. 284; *Sea Food* v. *Alves,* 77 So. 857; *Murray* v. *Natchez Drug Co.,* 56 So. 330; *Finkbine Lbr. Co.* v. *Cunningham,* 57 So. 916; *Brooks* v. *Desoto Oil Mills,* 57 So. 228.

Defendant cannot escape liability when the place was unsafe, even though it was made unsafe by the act of a fellow servant; however, in this case an inexperienced employee was performing a duty at a spot where it was dangerous to work after being instructed by the master to work at that particular spot, when the master knew that the tree was apt to be pulled up at any time and kill him. The vice principal, Mr. Bob White, admitted that he had seen other trees pulled up by guy wires by the same machinery which pulled up the tree that killed Alexander and therefore he knew that Alexander was liable to be killed.

The master owed another duty to Alexander. It was the duty of the master to supervise his work and see that it was conducted in a way that would not endanger

the life of Alexander. See the following cases: *Edwards* v. *Haines-Walker Lbr. Co.,* 74 So. 284; *Bates* v. *Brevards Woods, etc.,* 76 So. 553.

Counsel cite very few Mississippi cases; however, they cite the case of *Kent* v. *Y. & M. V. Railroad,* 77 Miss. 494, and a number of other cases announcing the same principle which is announced in the Kent case. All of these cases simply announce the well-established rule that the master is only required to furnish implements such as were generally used for the purpose for which the implement was being used when the servant was injured. We do not feel that it is necessary to point out to this court the difference between the duties of the master in regard to the furnishing of implements, and the duties of the master to furnish a safe place to work, and the duty of the master to supervise the work and conduct the same in a manner which will not endanger the life of the servant. In the first instance the master is only required to furnish a reasonably safe implement, and when he does this is liable only when he knows of the defect in the implement or by the use of ordinary care, could have known of such defect. See *Mississippi Central Railroad Co.,* v. *Bennett,* 71 So. 310. The burden of proving that the master knew of the defect or by the use of ordinary care could have known same, is upon the servant. We could cite any number of cases upon this point but the Bennett case accurately lays down the rule.

Counsel cites the case of *Hope* v. *Railroad Company,* 98 Miss. 822, which is in line with the Kent case last referred to. In that case a link was defective and of course the master had no way of knowing the link was defective. Counsel cite the case of *L. C. Railroad* v. *Wooly,* 77 Miss. 927. A casual reference to this case will show that it has no application to the case at bar. In that case the track was defective and it was proven that the master made a reasonable effort to keep the track in a safe condition.

Counsel relies upon the case of *Cyber Lumber Company* v. *Erkhart,* 79 So. 235, 118 Miss. —, that case can be easily diffierentiated from the case at bar. Erkhart was a member of the skidder crew. When the logs were being pulled tioward the track they struck a bay tree and broke the trunk of the tree some one hundred feet from the ground. The top of the tree fell over on the ground but the trunk still rested upon the stump of the tree. It was the duty of Erkhart to assist in setting up and taking down the skidder. The foreman, Clark, directed that the apparatus be dismantled for the purpose of moving to another place; another employee named Gipson, called out. "Give me some slack." This remark was directed to no particular party but the plaintiff who was sitting near the skidder walked over to pull on the guy line and thereby give Gipson slack and the bay tree slipped from the stump and injured him. The foreman, Clark, was not present when Gipson called out to his co-worker to give him some slack and gave no instructions to the plaintiff except to request in general terms that he assist in dismantling the skidder. The foreman did not know that the tree was broken and had no reason to anticipate danger from it. The tree did not fall because of the operation of machinery but fell from some unknown reason.

In the case at bar it is undisputed that the plaintiff was given specific instructions by foreman to saw wood under the leaning tree which had no tap root, and which sat on the face of the earth and while the foreman was operating the machinery and after the log was fouled the foreman continued to strain on the machinery knowing that to do so would endanger the life of Alexander. The case at bar is so very different from the Erkhart case we feel that it would be a waste of time to further discuss it.

Answer to point number two made in brief of counsel for appellant. Counsel contend in their brief that if

there was any negligence at all in the fastening of the
guy wire to the pin oak tree that such' negligence was
that of the fellow servant of the decedent, in carrying
out details of the work which the master could not be
expected to supervise.

We shall attempt to demonstrate in this brief that
Alexander lost his life not through the negligence of the
master but through the negligence of Bob White, the
foreman and vice principal of the defendant corporation.
However, we submit that even through Alexander lost
his life because of the negligence of J. C. White who
who was a fellow servant, of Bob White who was not a
fellow servant, yet is the master liable? If we might ad-
mit that Bob White was, a fellow servant, when in fact
he was not a fellow servant and yet, should this case be
affirmed?

At the outset of this argument we call attention to
the fact that the negligence which caused the death of
Alexander was not the tying of the guy wire to the pin
oak tree but the operation of the machinery at a time
when the guy wire was tied to the pin oak tree and
after the log became fouled.

Counsel cites many cases upon this point but the dearth
of Mississippi cases cited is noticeable and yet it has
been held on several occasions by this court that the
members of a skidder crew performing duties such as
Alexander was performing are protected by the Laws of
1908, chapter 194, which is as follows: "Ever employee
of the railroad corporation and all other corporations
and individuals using engines, locomotives, or cars or
any kind whatever, propelled by the dangerous agencies
of steam, electricity, gas, gasoline or lever power and
run on tracks, shall have the same right and remedies
for all injuries suffered by and from the act of ommiss-
ion of such railroad corporation or others of their em-
ployees as are employed by law, to other persons not em-
ployed."

56—122 Miss.

In the case *Hunter* v. *Ingram Day Lumber Company,*
70 So. 901, it was held that a lumber company who oper-
ated log trains run by steam was within the above law
abrogating the fellow servant rule. In the following
cases it was held that members of a skidder crew per-
forming the same work that Alexander was performing
was within said law. *Hunter* v. *Ingram Day Lbr. Co.,*
70 So. 901; *J. J. Newman Lbr. Co.,* v. *Irwin,* 79 So. 2;
*Ellis* v. *Bear Creek Lbr. Co.,* 78 So. 706; *Benton* v. *Fink-*
*bine Lbr. Co.,* 79 So. 346; Alexander lost his life because
of the negligence of Robert White, defendant, who was
not a fellow servant of Alexander.

We refer the court to the case of *Bradley* v. *Taylor,* 37
So. 812. In that case a foreman had charge of a laundry
and had control of everything and everybody, just as Bob
White had control of this skidder crew and had control
of everything and everybody. Of course if the New
Deemer Manufacturing Company, through its supervisor,
had superintended the works and given Bob White in-
structions as to the manner and methods of running the
machinery, the mere fact that he was foreman would not
have removed him from the station of a fellow servant,
but like that was true and we respectfully submit that he
was the vice principal and the master was responsible
for his acts. There are certain duties which the master
cannot delegate to a fellow servant. See R. C. L. 18,
page 731 and 732. The master must promulgate the proper
rules and regulations methods and manner of work and
this cannot be delegated. See R. C. L. 18, page 735.

Therefore we say that while Bob White was not a
fellow servant in any sense of the word; that even though
he was a fellow servant while performing certain duties,
yet while performing the duties which he was performing
when Alexander was injured he, of necessity, was in the
shoes of the master. When a superior gives direct orders
to the servant and the servant is injured as a result
thereof the master is liable. See R. C. L. 18, page 744

Answering the third point in defendant's brief touching the instruction given as to the measure of damages, we submit that counsel contend that the following instruction is erroneous: "The court instructs the jury for the plaintiffs that should they find for the plaintiffs they should award them such an amount as the jury may believe from the evidence will be reasonable compensation, for such an amount as the jury may believe from the evidence is the present value of the amount James Clarence Alexander would have earned, if any, during the remainder of his life had he not lost his life as alleged in the declaration herein, and in addition thereto shall award the present value of any support which the jury may believe from the evidence that the said James Clarence Alexander would have given to his children until they reached their majority, provided the jury believes from the evidence that the said James Clarence Alexander and the said children would have lived until said children reached their majority, and in addition thereto such an amount, if any, as the jury may believe from the evidence will be reasonable compensation for the loss to the wife and children of the companionship, protection and society of the husband and father, but not by way of solatium."

As we understand the argument of counsel they contend that the instruction is erroneous because it authorized the jury to award the present value of the life expectancy of James Clarence Alexander, contending that the instruction should have told the jury to award the present net value of his life expectancy. They further contend that the instruction is erroneous because it authorized the jury to award in addition to the net value of the life expectancy of the deceased, the amount which the jury believe from the evidence the decedent would have given to his children before they reached their majority, and also the present value of the support which the decedent would have given to his wife, had he not lost his life.

They do not contend that the jury was not authorized in awarding reasonable compensation for the loss of the wife and children, of the companionship, protection and society of the husband and father, but not by way of solatium.

This court has frequently held that the life expectancy of the deceased is a proper element of recovery in suits such as the case at bar. See *G. & S. O. Ry.* v. *Boone*, 82 So. 335; *Miss. Central Ry.* v. *Robinson*, 64 So. 838.

Opposing counsel do not contend that the instruction is in any way erroneous, except that where the jury was told that they might award reasonable compensation for the present value of the life expectancy of the deceased; that they should not have further been told that they might award in addition thereto a reasonable value of what the deceased would have given to his wife and children. None of counsel do contend that the jury could award only the net value of the life expectancy of the deceased. In other words, that the jury could award only what the deceased would have saved during his lifetime and not what he would have earned.

The Boone case above referred to and any number of decissions in this state, lays down the rule plainly that recovery can be had for the present value of the life expectancy and not the present value of the net value of the life expectancy.

The statute under which this suit was brought authorizes recovery for "such damages as the jury may determine to be just taking into consideration all the damages of every kind to decedent and all damages of every kind to any and all parties interested in the suit." Laws 1908, ch. 167.

As said by Judge McLain in the case of *St. Louis Ry. Co.* v. *Moore*, 58 So. 471: "We must presume the legislature knew the force and effect of their enactment. They must have been cognizant of the statute and the decisions under them, and they must with such knowledge

have known the force and effect of such language. Therefore the plaintiffs in this suit were entitled to recover what the deceased could have recovered had he brought this suit, or rather had it been possible for him to do so. If it were possible for him to bring the suit, he could recover for his own life expectancy because the statute gave him the right to recover for all loss which he sustained. The parties to the suit were entitled to recover for the losses which they sustained, to-wit: The support which he would have given them and the advantage of his society, because the statute authorizes the plaintiffs to recover all damages sustained by the parties to the suit. ˙ We refer the court, especially, to the case of the *Cumberland Telephone & Telegraph Co.* v. *Anderson* 89 Miss. 745, 41 So. 263.

Indeed the instruction before the court was drawn under that decision. This decision is the only one in the books where the court attempts to enumerate the items of recovery under the statute which we are considering. A reasonable expectation of receiving before and after majority and also whatever sum the son might have recovered as the present value of his own expectancy, these four elements are proper. *I. C. Ry. Co.,* v. *Fuller,* 63 So. 265; *Miss. Oil Co.,* v. *Smith,* 95 Miss, 528, 48 So. 735.

Even though the instruction as to the measure of damages were erroneous, this would not warrant a reversal of this case. This court has frequently held that even through an error was committed in the giving of an instruction, if the whole record shows that justice had been done, that the case would not be reversed.

In the case of *Railroad Co.* v. *Moore,* herein before recited, an error was made in an instruction touching the measure of damages. Judge McLain said in that case: "In determining what damages are recoverable, in actions like the one under consideration, we must look alone to the statute; this is the measure and limit of the right. If it be error it is therefore harmless, and, looking

through the entire record and taking into consideration the amount of the verdict, we cannot say that the instruction is a reversible error.'' The verdict was evidently right on the facts. Is this verdict right on the facts? The master was held liable. There is absolutely no evidence in the record and counsel do not contend that Alexander was guilty of contributory negligence.

Therfore, even if the instruction complained of was erroneous, if the record shows that the damages, which the plaintiffs were entitled to recover, was clearly not in excess of the verdict, then the verdict should not be disturbed.

We call the court's attention to the *Scaggs case,* decided by the supreme court of the United States and to be found in volume 60 (L. Ed.), page 328.

Wherein an error was given as to measure of damages, but the case was not reversed because the defendants sat silently by, until after the verdict, and then complained for the first time that the proper instruction was not given. *St. Louis, Ry. Co.* v. *Brown,* 241 U. S. 223, 60 L. Ed., 966. The verdict was not excessive. While appellants contend that the verdict was excessive and cite a large number of cases, they cite no Mississippi case that will substantiate their contention. We refer the court to the recent case of *Y. & M. V. Ry. Co.* v. *Dees,* 63 So. 613.

In that case a man was ruptured and a verdict of fifteen thousand dollars was affirmed.

In the *Boone case* to be found in 82 So. 335, a soldier who was making twenty dollars per month and who had no wife nor children, nor mother nor father, lost his life and verdict of twenty thousand dollars was affirmed by this court. We could cite cases innumerable in support of this contention but do not feel that it is necessary to do so. The loss of the association, advice and counsel of the father and husband, and the loss of the many services which he rendered to his family about the home

would support the verdict rendered regardless of the value of his life expectancy.

In conclusion we humbly submit that this record shows that Alexander lost his life through the gross carelessness and negligence of the appellant, and that a jury has passed upon the question and this court will be most reluctant to disturb the finding of that jury. We contend: First, that the instruction as to the' measure of 'the damages is correct. Second, that even if it be erroneous as contended by appellants, yet should the case be affirmed, because the record as a whole shows that the amount awarded by the jury was clearly warranted by the testimony. We earnestly urge upon the court consideration of the following facts.

Under any view of the case appellees were entitled to recover the life expectancy of the decedent plus the value of his association, advice and counsel, etc. If this be admitted, (and there is no dispute about that fact), then why should the' case be reversed even though the instruction complained of was erroneous when the following facts are undisputed: First. That Alexander and his wife were both perfectly healthy and that her life expectancy exceeded his. Second. That his life expectancy was worth twenty-three thousand six hundred and forty-one dollars and twenty-eight cents even though he had made no money except the one dollar and seventy-five cents per day, Third. That he was a solicitous and attentive and kind father and the loss of his advice and counsel was worth a great deal to his wife and children. The above facts are undisputed and we earnestly submit that when the undisputed facts justify the verdict, then the case should not be reversed even though an error was made in the instruction complained of.

In conclusion we respectfully call the attention of the court to the wording of the statute: "In such action the party recover such damages as the jury may determine to be just, taking into consideration all damages of every

kind to the decedent and all damages of every kind to all parties interested in the suit.''

''Damages for the injury and death of a married man shall be equally distributed to his wife and children and if he has no children, all shall go to his wife, etc.''

''All damages of every kind to the decedent and all damages of every kind to the parties interested in the suit''. Let us consider the argument of counsel.

If it be true that only the life expectancy can be recovered then if a man made a hundred dollars per month and spent seventy-five dollars of it on his wife who was a faithful helpmate and both the man and wife were healthy people, and the man lost his life, she could recover no more than if she were an unfaithful wife who lived apart from him and had a separate estate and received no aid from him and expected none.

Again, if a man made a hundred dollars and spent seventy-five dollars per month on his infant children who had no support but the aid given them by the father and he died, such children could recover no more than if the children did not live with him and were not supported by him and had separate estate of their own. To put such an interpretation upon the statute would be equivalent to annulling absolutely that clause of the statute which says that ''damages of every kind sustained by all interested parties may be recovered.''

Surely this court will not thus, by judicial construction, partially annul a statute that has already been properly and accurately construed after sound deliberation and thorough investigation and thereby defeat the will of the law-making body of the state.

We refer the court to the following cases wherein erroneous instructions were given as the measure of damages and the cases were affirmed because the record as a whole showed that justice had been done. *R. C. Co.* v. *Moore,* 101 Miss. 768, — So. 471; *Mobile & Ohio R. R. Co.* v. *Campbell,* 75 So. 554. We especially call the atten-

tion of the court to the case of, *I. C. R. R. Co.* v. *Brown*, 39 So. 531, where it was expressly held that where the right result had been reached, the case would not be reversed because of erroneous instructions. This case is directly in line.

The following cases hold that where the verdict is right on the facts and the law, the verdict will not be reversed because of erroneous instructions *Dozier* v. *Ellis*, 28 Miss. 730; *Evans* v. *Lilly & Co.*, 95 Miss. 58, 48 So. 612; *Nichols* v. *Gulf & Ship I. R. R.* 36 So. 192; *Wiggins* v. *McGimpsey*, 13 S. & M. 532. *Memphis R. R.* v. *Whitfield*, 44 Miss. 466. The books are filled with cases announcing this rule and we feel that it is useless to cite more of them.

In view of the fact that a jury has passed on this question and in view of the further fact that no other result can be hoped for on another trial, we humbly submit that this case should be affirmed, even though error was committed instructing the jury as to damages.

We would not be misunderstood. The instruction as to damages is proper; a great deal of thought and study was given to it before it was drawn and at the time that it was submitted to the court. We were convinced then, and are even more so now, that it correctly announces the law.

For the above reason we submit that the case should be affirmed.

ETHRIDGE, *J.*, delivered the opinion of the court.

Appellees brought suit against the appellants for the death of James Clarence Alexander, the husband of Ida Mae Alexander and the father of the other appellants. The New Deemer Manufacturing Company is a lumber manufacturing company and, among other instrumentalities, operated what is known as a skidder and drum which is placed on the railroad track and operated by the dangerous agency of steam, and which is used for the

purpose of drawing logs from the forest to the tracks and loading them on cars; the logs being attached to a cable and pulled from the forest to the track by means of a cable drawn by steam power. In order to make the skidder and drum secure, guy-ropes or wires were fastened to stumps or trees or to logs buried beneath the ground, and unless securely fastened the machinery would be liable to be pulled off of the track.

One Robert White was the foreman of the skidder crew and operates the machine. The deceased was engaged in cutting wood to be used in firing the machine at and near the machine and was a member of the crew under the direction of White, the foreman. The guy wires of the skidder were fastened to trees at the time of the injury, and one of the trees to which said guy wires were attached was a pin oak which leaned slightly from the skidder in the direction of where the deceased was working, and this pin oak was pulled out of the ground and fell upon the deceased and killed him during the operation of the skidder in pulling the log from the forest to the track of the appellant.

It appears from the testimony of plaintiffs that in drawing the particular log from the forest it became fouled, that is to say, lodged or fastened against a tree or some obstruction, and three pulls or efforts were made to dislodge it by operating the machine. According to the plaintiff's witnesses, these were powerful efforts to dislodge the log being drawn by the use of steam power, and, when such efforts were unavailing, the log was dislodged by the means of horse power or some force which would dislodge the log from the obstruction when it would be drawn by machinery onto the track. According to witnesses for the plaintiffs, the skidder was a powerful machine operated by steam, and, when the cables or ropes were attached to a log and it became fouled, powerful force was applied, and it is shown in the testimony that sometimes the tree to which the guy ropes were attached

pulled up out of the ground, It is in the testimony for the plaintiffs that the pin oak is a tree having no tap root but the roots of which lie along the surface of the ground, and that it was a matter of common knowledge among timber men that the pin oak was unsafe for the purpose for which it was used in the present case.   It is also shown for the plaintiffs that it was customary to make one or two pulls to unfoul a log with the machine, before unfouling it with other appliances, and it is the testimony that on the occasion resulting in Alexander's death three powerful pulls with the steam were used before it was unfouled.   After being unfouled, it proceeded a short distance and was fouled again, when another application of steam power was made which unfouled the last obstruction.   But shortly, and almost immediately, thereafter the tree fell upon the deceased and killed him.   The operator of the steam power testified that the log had become unfouled by the use of the machine and proceeded some distance before the tree fell, and that the first notice he had of the tree falling was when he felt the wind from the falling tree.   The pin oak to which the guy wires were attached and which killed the deceased was in a swamp, and the ground was wet from a rain the day before, and it was pulled up, making a hole where it stood some five feet in diameter and a foot and a half in depth.

It appears that White, the foreman, had recently been installed in this work, having no previous experience in this particular work, but had been engaged in opning a right of way for railroad or logging road, and had used machines for the purpose of pulling trees out of such right of way.   White claimed he had no knowledge that a pin oak had no tap root prior to the injury, but admits that he had pulled up and seen pulled up trees before that time to which guy ropes were attached.

There was a conflict between the evidence for the plaintiffs and for the defendants upon the question as to whether a pin oak was a safe tree to use for this purpose

and as to common knowledge upon this subject. There was a verdict for the plaintiffs.

The appellants insist that there should have been a peremptory instruction for the defendants on liability, contending that there is no evidence showing or tending to show that appellants knew or had reason to believe that the tree would fall. In our view of the case the majority of the court thinks there is sufficent evidence to go to the jury to find that there was knowledge among experienced timbermen that the pin oak tree had no tap root and was an unsafe tree to use for the purpose for which it was used in this case. The evidence shows that the machinery used for toning was very powerful and that when a log was being drawn and became fouled, and the power of the machinery was applied, that something was liable to give way. It appears from the foreman's own testimony that other trees had been pulled up by this method, and it appears from all the evidence that the force used is very powerful. We think there was sufficient evidence to warrant the jury in believing that the appellant knew or ought to have known of the danger in using this kind of tree, and that a peremptory instruction was rightfully refused. It is true that the appellants are only required to use due and reasonable diligence, but if the evidence for the plaintiffs was true it was negligent in this respect.

It is next contended that, if there was any negligence at all in fastening the guy wire to the pin oak, it was the negligence of a fellow servant of the decedent in carrying out the details of the work which the master could not be expected to superintend. We think the deceased being a member of the crew and under the jurisdiction of foreman White, being directed by White where to work, his work being necessary for the operation of the machinery under the plans which were being used by the company, that it comes within the provisions of chapter 194, Laws

of 1908, section 6684, Hemingway's Code, which reads as follows:

"Every employee of a railroad corporation, and all other corporations and individuals, using engines, locomotives or cars of any kind or description whatsoever, propelled by the dangerous agencies of eteam, electricity, gas, gasoline or lever power, and running on tracks, shall have the same rights and remedies for an injury suffered by him from the act or omission of such railroad corporation or others, or their employees, as are allowed by law to other persons not employed.

"Knowledge, by any employee injured, of the defective or unsafe character or condition of any machinery, ways or appliances, or of the improper loading of cars, shall not be a defense to an action for injury caused thereby, except as to conductors or engineers in charge of dangerous or unsafe cars or engines voluntarily operated by them. When death ensues from an injury to an employee, an action may be brought in the name of the widow of such employee, for the death of the husband, or by the husband for the death of his wife, or by a parent for the death of a child, or in the name of a child for the death of an only parent, for such damage as may be suffered by them respectively by reason of such death, the damages to be for the use of such widow, husband parent or child, except that in case the widow should have children, the damages shall be distributed as personal property of the husband. The legal or personal representatives of the person injured shall have the same rights and remedies as are allowed by law to such representatives of other persons. In every such action the jury may give such damages as shall be fair and just, with a reference to the injury resulting from such death to the person suing. Any contract or agreement expressed or implied, made by an employee to waive the benefit of this section shall be null and void; and this section shall not deprive an employee of a person, natural

or artificial, or the legal or personal representatives of
such person, of any right or remedy they now have by
law."

See *Hunter* v. *Ingram Day Lumber Co.*, 110 Miss. 744,
70 So. 901; *J. J. Newman Lumber Co.* v. *Irving*, 118
Miss. 59, So. 2; *Ellis* v. *Bear Creek Lumber Co.*, 117 Miss.
742, 78 So. 706.

The instruction for the plaintiff on this point is as
follows:

"The court instructs the jury for the plaintiffs that
if the jury believes from a preponderance of the evidence
that Bob White was the foreman of the skidder crew and
that James Clarence Alexander was a member of the
said crew and that the said Bob White as foreman of
said crew had charge of the work about which the said
skidder crew was engaged and had control of the members
of said crew and was vested by the New Deemer Manu-
facturing Company with authority to control and direct
the services of the members of the said crew, and that
he told James Clarence Alexander to saw a log of wood
at a time when there was a guy line tied to a pin oak tree
near where the said James Clarence Alexander was re-
quired to work, and that the said pin oak tree was not
sufficiently embedded in the earth and would not stand
the strain which would naturally be put upon it should
a log become fouled, and that the said Bob White, know-
ing the location of said Alexander and knowing said log
was fouled, operated the machinery which drew the log to-
ward the track at a time when the log was fouled and
when he knew or by the exercise of reasonable diligence
could have known that to operate said machinery under
the circumstances would endanger the life of the said
James Clarence Alexander and that the tree was there-
by caused to be pulled up, and fell upon James Clarence
Alexander as a result of the operation of the said
machinery under the circumstances under which it was

operated, then in that event the jury should find for the plaintiffs as against both of the defendants.''

It is next insisted by the appellants that the instruction for the plaintiff as to measure of damages is erroneous and that the case should be reversed for this reason.   This instruction reads as follows:

''The court instructs the jury for the plaintiffs that should they find for the plaintiffs they should award them such an amount as the jury may believe from the evidence will be reasonable compensation.   For such amount as the jury may believe from the evidence is the present value of the amount James Clarence Alexander would have earned, if any, during the remainder of his life, had he not lost his life as alleged in the declaration herein. And in addition thereto, shall award the present value of any support which the jury may believe from the evidence that the said James Clarence Alexander would have given to his children until they reached their majority, provided the jury believes from the evidence that the said James Clarence Alexander and the said children would have lived until said children reached their majority.   And, in addition thereto, such an amount, if any, as the jury may believe from the evidence will be reasonable compensation for the present value of any amounts which the jury may believe from the evidence that the said James Clarence Alexander would have given to his wife during the remainder of his natural life for her maintenance and support providing the jury believe from the evidence that his wife would have lived as long as James Clarence Alexander.   And, in addition thereto, such an amount, if any, as the jury may believe from the evidence will be reasonable compensation for the loss to the wife and children of the companionship, protection, and society of the husband and father, but not by way of solatium.''

In the view of the majority of this court, this instruction is erroneous because it authorizes a recovery of such

an amount as the jury may believe from the evidence is the present value of the amount deceased would have earned, if any, during the remainder of his life, and, in addition thereto, shall award the present value of any support which the jury may believe from the evidence the said James Clarence Alexander would have given his children until they reached their majority, and the present value of any amount the jury may believe Alexander would have given his wife, and, in addition thereto, such amount as will be reasonable compensation for the loss to the wife and children, of the companionship, protection, and society of the husband father. In other words, the jury were told they must find the present value of all that Alexander would have earned during his expectancy, and then, in addition to all he would have earned, such further amount as it would take to support his wife and children until the children should reach their majority and as long as the wife lived, thus making the monteary value of his life not only what he would have earned, without diminution for his own support, but also such additional amount as it would take to support his wife and children. The wife and children would have been supported had Alexander lived from his earnings because he had no income other than his earnings as shown in the evidence. When the defendants, have paid all that the deceased would have earned during his expectancy they have paid all the monetary value of Alexander's life, and when, in addition to that, they have paid reasonable compensation for the loss of companionship, protection, and society, they have paid the full value recognized or imposed by the statute, there being no pain and suffering by deceased the death being instantaneous.

The statue, Laws 1914, Chapter 214, Hemingway's Code, section 501, provides the measure of the right, after providing who may sue, and providing for an action resulting from death as follows: .

"In such action the party or parties suing shall recover such damages as the jury may determine to be just, taking into consideration all of the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit."

The rights other than for loss of companionship, protection, and society of all the parties is rooted in the earnings of the decedent during his expectancy. So far as the present case is concerned, as there was no pain and suffering, the death being instantaneous, the suit may be brought by one for all, or all may join in one suit, and the jury are to consider all the rights that all of the plaintiffs have and all damages that fall to each of them. But it is manifest that so far as the support is concerned that such support had the decedent lived must come out of his earnings. There was no other source of income in the present case for these benefits to flow from. The instruction as asked pyramided all of these items, making double damages by allowing not only all of the money he would have earned, but, in addition to all he would have earned, the support of his wife and children where there was no source for such other damage to come from on the present record. It is insisted by the appellees that this construction is warranted by the case of *Cum. T. & T. Co.* v. *Anderson,* 89 Miss. 732, 41 So. 263, and this case seems to have been misunderstood in drawing the present instruction. The instruction in the Anderson Case was condemned and the judgment reversed because it was erroneous. In the course of the opinion Judge Whitfield said:

"The extent of recovery, before majority, of the child killed, is the value of the services of the child from the time of death up to majority, plus such damages as the jury may fairly award as compensation for the physical and mental anguish endured by the child killed between the injury and death, to which must also be added any such gratuities as the evidence may show the mother had

a reasonable expectation of receiving before or after majority, and also whatever sum the son might have recovered as the present value of his own expectancy. These four elements of damage are all proper.''

The language quoted is misleading because the opinion does not point out, what was evidently in the mind of the court, that the son's expectancy should be measured and valued with reference to the other elements of damages. He would not recover the earnings of that part of his life which belonged exclusively to his mother. All these elements named are proper to be considered by the jury; but, in the language of the statute, after the jury has considered these various elements, the jury finds such amount as it ''may determine to be just, taking into consideration all of the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit.''

The language of this opinion above set out was used by the judge after the instruction had been condemned and, while persuasive, was nothing more than an expression of his views not necessary to the decision of the case. The object of the statute is to furnish compensation for the injuries received to the parties suing for the death of the deceased, they having the right to sue for the value of the life under the statute. Where there is pain and suffering between the injury and death, they are entitled to recover for that also; but the death in this case was instantaneous. The deceased was earning one dollar and seventy-five cents per day and had an expectancy of approximately thirty-six years, and the verdict was for twenty thousand dollars. We are unable to say that this verdict would not have been less had the jury been correctly instructed on the law.

The question of liability was submitted to the jury, on proper instructions, and the case on liability has been found by the jury in favor of the plaintiffs, and the majority of the court thinks the judgment as to liability

must be affirmed and the cause reversed and remanded for a new trial on the amount of damages.

*Affirmed in part, and reversed and remanded in part.*

STEVENS and COOK, JJ., dessent.

STEVENS, J. (dissenting).

I concur fully in all the court has said as to the measure of damages, but with due consideration and respect for the views of my associates I am unable to see upon what legal basis liability of the master can be predicated. As I understand the record, liability in this case gets back at last and must be predicated upon the alleged negligence of the master in attaching a guy wire to a large pin oak tree and in placng or permitting the deceased to chop fire wood under the spreading branches of this large green tree. It affirmatively appears that the pin oak tree upon which so much aspersion has been cast in this proceeding was a perfectly green or live tree eighteen inches through and sixty inches in circumference eighteen inches above the ground, and bore every appearance of being a perfectly sound and strong tree. It is true that some of the witnesses assert that a pin oak tree has no tap root, and the main grievance in this case is about the action of the defendant in not giving due significance to a bit of scientific knowledge that a pin oak tree does not usually have a large tap root. In my judgment the narrow question of fact of whether a pin oak tree does or does not have a tap root is not the controlling consideration. Under all the law of negligence the master is only required to exercise reasonable care in furnishing the servant a reasonably safe place in which to work. The log skidder was not being used for the purpose of pulling down the pin oak tree in question, and the cable employed in dragging the logs from the

woods toward the skidder was on the opposite side, and the pin oak tree was simply used to steady or make safe on the track the cars upon which was stationed and in operation the skidder machinery. The foreman and servants of the defendant at no time admitted that the guy wire had ever pulled down a pin oak tree. This unfortunate tragedy appears to have been an unforeseen accident. Neither the foreman nor any one connected with the operations had the slightest intimation that such an accident would happen. I dare say that, if the defendant were to take its machinery and employees and repair to any portion of the forest and attempt to reproduce the tragedy exactly as it happened in this case, they would be unable to do so. No accident of this kind had ever happened, and none such is reported in the law books. Learned counsel on both sides have utterly failed to cite a single case in any wise similar to the case at bar. This is persuasive to my mind that the master could not anticipate and guard against the injury here complained of. To apply the safe place to work doctrine in this case is to my mind illogical. It amounts to a declaration that when Alexander, the deceased, was put to chopping wood under the spreading branches of a large green oak tree, he was directed to a place of danger. The expression "as strong as an oak" has gone into the literature of the nations. Here was a tree that had stood the storms for many years Amos in describing the Amorite the destruction which the Lord had visted upon him said:

His "height was like the height of the cedars, and he was strong as the oaks; yet I destroyed his fruit from above, and his roots from beneath." Amos, 2: 9.

There is a further construction as to liability. The absence of a tap root was not a visible fact to the master or to master's foreman. The bald fact that the oak had no tap root in my judgment is not sufficient to characterize it as an unsafe tree, and furthermore, there were

other trees and stumps near by to which the foreman might have attached the guy wires, and, if there was mere negligence in the mere detail of selection a tree, it was a detail that must in the nature of things be left to the best judgment of some employee and over which the supervision of the master could not very well be exerted. It is necessary to go to the extent of holding that this was a nondelegable duty. This, in my judgment, is carrying damage suit law into the field of uncertainty and conjecture, especially in the shifting scenes of felling trees and dragging out logs in the forest. The work is inherently dangerous. It has been my fortune to observe logging operations all my life, and it occurs to me that logging, whether by hand or by machinery, is inherently dangerous and hazardous. There are accidents which the genius of man has thus far failed to guard against. Mr. Labbatt says that the master "is not bound to supervise the mere executive details of the work to be done by his servants" (volume 4, p. 4542), and he cannot be held liable for injuries caused by the manner in which the servants use those instrumentalities for the performance of their work (pags 4551).

There is not material negligence in this case in the method of handling the skidder. Some complaint is made of the fact that the skidder foreman made three pulls at the log that became fouled. He was simply doing exactly what his machinery was made and installed for. Unfortunate and deplorable as the tragedy in this case certainly was, to enforce liability on the ground of any alleged negligence is to make of the master in this case an absolute insurer of the employee's safety—an exaction that has never been made by the law of the land.

Cook, J., concurs in this dissent.