## BELZONI HARDWOOD CO. *v.* CINQUIMANI.*

(In Banc. Nov. 24, 1924.)

[102 So. 470. No. 23569.]

1. DEATH. *Two thousand dollars damages held grossly inadequate.*

   In action for death under Hemingway's Code, section 501, in which plaintiff claimed damages of every kind to decedent, and to plaintiff as his widow, two thousand dollars verdict *held* grossly inadequate, where decedent was thirty-five years old, earning four dollars a day as log loader, and lived about six hours after accident.

2. VENUE. *Granting change of venue for prejudice against plaintiff held not abuse of discretion.*

   Action of court in granting change of venue because of prejudice against plaintiff *held* not abuse of discretion, where testimony supported finding of court that because of such prejudice, plaintiff could not obtain a fair and impartial trial in county in which action had been brought.

3. DEATH. *Ten thousand dollars for suffering of decedent held excessive.*

   In action for death under Hemingway's Code, section 501, in which recovery was limited to damages sustained by decedent, ten thousand dollars verdict for pain and suffering of decedent, who died about six hours after accident in which he sustained fractured skull, *held* grossly excessive and subject to *remittitur* of five thousand dollars.

4. DEATH. *Value of decedent's expectancy not recoverable in action limited to damages to decedent.*

   Under Hemingway's Code, section 501, providing for recovery of all "damages of every kind" to all parties interested in action for wrongful death, the present net value of the life expectancy of the decedent is not recoverable where action is limited to damages to decedent.

   ETHRIDGE and HOLDEN, JJ., dissenting.

---

*Headnotes 1.   Death, 17 C. J., Section 236; 2. Venue, 40 Cyc., p. 135; 3. Death, 17 C. J., Section 235; 4. Death, 17 C. J., Section 196.

APPEAL from circuit court of Washington county. HON. S. F. DAVIS, Judge.

Suit by Mrs. Nellie Cinquimani against the Belzoni Hardwood Company. Judgment for plaintiff, and defendant appeals, and plaintiff cross-appeals. Affirmed, with *remittitur*.

*Mortimer & Sykes,* for appellant.

The Humphreys County Trial. This case was before this court on appeal once before and is to be found reported in 89 So. 920. The style of the case there is *Belzoni Hardwood Lumber Company* v. *Langford,* and its present style, *the same appellant* v. *Mrs. P. A. Cinquimani,* is brought about by the fact that the appellee has since remarried. The court in the former opinion in this case said: "We do not say that the conduct of the wife, or the strained relations existing between a man and his wife ought not to affect the right to recover some of the elements of damages that are allowed by the statute in such cases." This holding is in line with all the authorities relative to the right of the unfaithful wife to recover her damages for the death of her husband. *St. Louis & San Francisco Ry. Co.* v. *Moore,* 101 Miss. 768; *Stimpson* v. *Wood* (England), 57 L. S. Q. B. (N. S.) 484; 59 L. T. (N. S.) 218; 36 Week. Rep. 734; 52 J. P. 822; *Orendorf* v. *N. Y. Central Ry. Co.* (N. Y.), 119 App. Div. 638, 104 N. Y. Supp. 222; *Ingersoll* v. *Detroit Ry. Co.,* 163 Mich. 268; *Dallas etc. Ry. Co.* v. *Spicker,* 61 Tex. 427; *Baltimore etc. Ry. Co.* v. *State,* 81 Md. 371; *Gulf etc. Ry. Co.* v. *Delaney,* 22 Tex. Civ. App. 427; *De Garcia* v. *San Antonio etc. Ry. Co.* (Tex.), 77 S. W. 275, 17 C. J. 1208; 8 R. C. L. 833, sec. 108; Exhaustive note, 1916-C L. R. A. 806.

Was the verdict grossly inadequate, this being the reason given the court below, for the sustaining of this motion for a new trial? The deceased had suffered from gallstones, bladder trouble and appendicitis and had been operated on for some of these troubles. 17 C. J.

1344, sec. 232, lays down the rule for the ascertainment of the value of a life. This is the rule in Mississippi. *Manufacturing Company* v. *Alexander*. 122 Miss. 896; 17 C. J., sec. 232. The evidence shows that his living expenses and personal expenditures consumed everything he made. It will be noted that the appellant has a logging railroad and that Langford was killed by a log falling off of one of its cars and crushing his skull. He is, therefore, among that class of employees covered by section 6684, Hemingway's Code, which statute applies in this case. Section 501, Hemingway's Code; Sec. 6684, Hemingway's Code. To warrant the lower court in setting this verdict aside for gross inadequacy, one of two things, or both, must be shown by this record, first either the verdict was not commensurate with the amount of damages shown to have been sustained by the wife and widow, who was the party suing, or, second, it was not commensurate with the damage shown to have been sustained by the decedent. We take the position that the only damages which can be recovered by the wife and widow as damages for the death of her husband are damages for loss of comfort, society and protection, but not by way of solatium and loss of support; or, in other words, the pecuniary value of the life to her. We most emphatically contend that she cannot recover as an element of her damages, as wife and widow, the value of the life of the deceased. It is well settled that damages for mental and physical pain are not recoverable unless the injured person is conscious. *Railroad Company* v. *Fuller,* 106 Miss. 65, 63 So. 625; *Railroad Company* v. *Moore,* 101 Miss. 780, 54 So. 741. We most emphatically contend here, also, that neither is the value of the life of the decedent recoverable as an element of damages to the decedent. By reference to section 501, it is noted that in determining the amount of damages, the jury is to take into consideration all damages of every kind to any and all

parties interested.  Section 6684, Hemingway's Code. Thus it is that our statutes on this subject expressly provide that the damages to the parties suing are a recoverable element of damage in these cases and that since this is so, that is exclusive of a recovery for the value of the life of the deceased either as an element of damages to the deceased or as an element of damages to the parties suing, the only damage with reference to the value of the life which is recoverable being the value of the life to the parties suing.  On the proposition as to what is recoverable as damages to the decedent, we have taken the position that this is confined to the mental and physical pain and suffering between the time of the injury and the time of death, loss of time and expenses for medical services and the like, but that the value of the life cannot be recovered as a damage to the dead man.  In order to arrive at a proper conclusion upon this question, it is necessary to consider our statutes upon the subject.  We find a history of this legislation in the case of *Bussey* v. *Railroad Co.*, 79 Miss. 607; *Railroad Co.* v. *Crudup*, 63 Miss. 298; *Folkes* v. *Railroad Co.*, 9 Heisk. 829; *Railroad Co.* v. *Phillips*, 64 Miss. 693, 2 So. 538.

The court will notice that this case recognizes a distinction about which there has never been a controversy, viz:  In cases of death resulting from wrongful injury, there are two elements of damages, the damage which the decedent sustained and the damage sustained by the next of kin, and expressly holds that the only damage which the administrator could recover would be such damages as the decedent could have recovered had death not intervened and at the same time recognizes that by virtue of section 1510, Code of 1880, the next of kin, who are set forth in that section, could bring suit and recover damages sustained by them on account of the death of the decedent.  *Railroad Co.* v. *Pendergrass*, 69 Miss. 429.  No language could be more emphatic that

the value of the life of the deceased could never be
recovered as an element of damages to the next of kin,
or the value of the life to the next of kin, who, under
section 1510, could alone sue. *McVey* v. *Railroad Co.,*
73 Miss. 493; *Kirkpatrick* v. *Ferguson Palmer* Co., 77
So. 806; *Hamel* v. *Southern Railroad Co.,* 108 Miss.
193, 66 So. 426-809.

Coming now to the proposition, may the value of the
life of the deceased be recoverable as an element of
damage to the parties suing, and if not, what is the
measure of their damages along this line. We repeat our
contention that their measure of damage is the damage
they have sustained by virtue of the death of the de-
ceased, or in other words, the pecuniary value of the
life to them. Sections 501 and 6684, Hemingway's
Code, sustain our contention. *Railroad Co.* v. *Crudup,
supra; Railroad Co.* v. *White,* 82 Miss. 468; *Mississippi
Oil Co.* v. *Smith,* 95 Miss. 528; *Telephone Co.* v. *Ander-
son,* 89 Miss. 732; *Railroad Co.* v. *Robinson,* 106 Miss.
903; *Electric Co.* v. *Sanges* (Ala.), 1917-B Ann. Cas.
466; *Railroad Co.* v. *Orr,* (Ala.) 8 So. 363; *Railroad
Co.* v. *Hicks,* 46 So. 394; 7 A. L. R. 1320; *Railroad Co.*
v. *Phillips, supra; Kirkpatrick* v. *Ferguson Palmer Co.,
supra; Hines* v. *McCullers,* 83 So. 736; *New Deemer
Mfg. Co.* v. *Alexander,* 122 Miss. 859; *Hines* v. *Moore,*
87 So. 3; *Vicksburg* v. *McLean,* 67 Miss. 4; *Railroad
Co.* v. *Watly,* 69 Miss. 150.

Our statute is clear on this question, as have been all
of our prior statutes; and our decisions have uniformly
limited the recovery to the pecuniary value of the life
to the parties suing up to the time of the confusing re-
marks of Judge WHITFIELD in the Anderson case, which,
on their face, show that that eminent judge did not mean
that all four of those elements could be recovered as
damages, but could only be considered by the jury in
making up their verdict, and which remarks were nothing
but *dictum* as stated by Judge ETHRIDGE in the Alex-

ander case, when he clears up this confusion. Therefore, we say that the value of a man's life is never recoverable as an item of damage in a death suit, but only the value of the life to the parties suing.

When the motion to change the venue came cn to be heard, the circuit judge ruled that the burden of proof was on the defendant and, therefore, required the defendant to put its witnesses on the stand to prove that the plaintiff could get a fair and impartial trial in this county. To which ruling the defendant then and there excepted and has assigned same as error here. 27 R. C. L. 814, sec. 34. The weight of authority is to the effect that the burden of proof on the motion is upon the movant and he should be required to make a clear showing to entitle himself to the requested change. The presumption of law always is that a fair and impartial trial can be had. 27 R. C. L. 815, sec. 35.

The court instructed the jury that the only damages recoverable were damages for physical and mental pain and suffering and they could not return these damages unless they were satisfied from the evidence that the deceased was conscious during some period of the time between his injury and death. We submit that the testimony is entirely too vague, indefinite and uncertain upon which to base a verdict against this appellant for any amount, and on that theory requested a peremptory instruction—the refusal of which is assigned as error here. But despite the weakness of the case, the jury brought in a verdict which we have not found paralleled for enormity, taken in connection with the facts, anywhere. *Telephone Co.* v. *Pitchford* (Miss.), 30 So. 41; *Railroad Co.* v. *Mullins* (Miss.), 76 So. 147; *Barber* v. *Railroad Co.* (La.), 76 So. 199; 1917-F L. R. A. 802; *Railroad Co.* v. *Craft* (Ark.), 1916-C L. R. A. 819; 1916-C L. R. A. 820.

*Walton Shields,* for appellant.

The plaintiff below was the widow and sole heir at law of Ernest Langford, the deceased. The suit was originally filed under section 501, Hemingway's Code, but on the third and last trial plaintiff amended her declaration so as to prosecute the suit solely as to damages to decedent, that is damages sustained by him because of any pain and suffering he endured and the testimony was limited to this. We contend that such a course cannot be followed in the trial of suits of this character. The widow or the personal representatives of the deceased could institute a suit under section 501, to recover all damages of every kind to the decedent and all damages of every kind to the widow. Or under section 1758, Hemingway's Code, the executor or administrator of the deceased could commence and prosecute a suit to recover damages which the decedent could himself have brought suit to recover.

Can the widow after proceeding in the institution of her suit under section 501, abandon all claims for damages to her and continue to prosecute the suit as if it had been brought in the first instance by her solely to recover damages to the decedent? Is not section 1758, Hemingway's Code, the only section under which that kind of suit can be brought? Section 501, Hemingway's Code, provides for the bringing of but one suit for the same death which shall ensue or enure for the benefit of all parties concerned. Can a cause of action be split up under section 501, as was done in the trial of this cause? We think not and for that reason the peremptory instruction should have been given. Even if there was sufficient evidence of pain and suffering to submit the case to the jury on that issue, the jury were misled by the instruction for plaintiff and evidently included in their verdict damages for the wrongful death of Langford. *Ry. Company* v. *Hayes,* 7 A.

L. R. 1310, 64 So. 504;   *O'Donnell* v. *Maine Central R. R. Co.*, 25 L. R. A. 658;   *Johnson* v. *Industrial Lumber Co.*, 60 So. 608;   *St. Louis Iron Mt. & So. Ry. Co.* v. *Craft,* 1916-C L. R. A. 817 and notes; 237 U. S. 648, 59 L. Ed. 1160.

*Barbour & Henry, H. F. Jones* and *J. D. Jones,* for appellee.

When the case was called in Washington county, the appellee, having been made to suffer by adverse rulings, as to certain alleged misconduct, which are discussed later, amended her declaration so that she dismissed "as to any claim for damages suffered by the plaintiff as the wife," because of the death of said decedent, and was allowed to prosecute the suit "solely as to any and all damages suffered by the said decedent, and which are recoverable by law." Counsel for appellant has filed a brief containing sixty-five pages, and, with great respect, we submit, has burdened the court with much irrelevant and useless discussion. The question of liability having been settled, the law of the case to be tried was very briefly, about this: The plaintiffff as the widow of Ernest Langford, was entitled to recover, without any diminution for contributory negligence, all damages "of every kind to the decedent, and all damages of every kind to any and all parties interested in the suit." Section 501. The recovery of "all damages of every kind to the decedent" (meaning full damages), was not to be diminished by reason of any alleged immoral misconduct of the plaintiff, the widow; whether such alleged conduct by her would reduce or affect her right to recover some of the elements of damages allowed her under the statute was not decided; "damages due for the death of the husband" were not to be affected by such alleged conduct, or strained relations between the plaintiff and the deceased; a verdict for

one thousand five hundred dollars under the facts of the case, was "grossly inadequate." So much for the law to govern the second trial.

The questions presented on this appeal, therefore, are: First, should the verdict of two thousand dollars in the Humphreys circuit court have been set aside and a change of venue to Washington county granted; second, is the verdict of ten thousand dollars, looking over the entire record of the trials, so grossly excessive, that it should be reduced by this court? The court will note that, after the amendment whereby appellee struck out and dismissed as to all claims for damages suffered "as the wife," the court would not allow proof of expectancy of life, etc., of deceased, his earning capacity, and cost of living, upon which the element of damages— the present value of his life expectancy—could be submitted to the jury. Only damages for physical and mental pain suffered by deceased was submitted. The appellee excepted, and has prosecuted a cross-appeal here. Therefore, if the court concurs in our view that, without this element of damages to support it, and viewing the three trials as a complete history of all the facts attending the wrongful death by negligence of a white man thirty-five years old, earning four dollars per day, the verdict of ten thousand dollars should stand, then the question so seriously pressed, as to whether the right of the appellee to recover "all damages of every kind to the decedent," or as Judge HOLDEN in his opinion in this case says "the damages due for the death of the husband," includes the present value of the life expectancy of the deceased, is out of the case.

If the court is of the opinion that this element is needed to support the verdict, the proof is all in the record; and the life expectancy is judicially known to you (19 R. C. L. 221) and under your repeated decisions it is held that, with this element considered, the verdict is small, and an affirmance should follow, and a reversal

and remand for new trial upon the amount of the verdict is entirely useless.  On the other hand, if the court is of 'opinion that after the amendment the appellant is precluded from recovering anything except the damages to decedent for pain and suffering, and the verdict is excessive, we do not ask a reversal, but that a *remittitur* be entered.  We do not want our frankness to be misunderstood. We think and so state, with all regard for our duty to the court, that on the whole record the judgment is not excessive.  That is the only question in the case, and a labored discussion of any other one is an imposition on the court.

Should the verdict of two thousand dollars have been set aside, and a change of venue granted?  As stated, the facts developed on the second trial were identical, as to earnings, health, age and relationship of plaintiff and deceased;  in fact every element upon which the sole issue of damages was to be determined.  Yet the jury verdict was only five hundred dollars more than one of Your Honors held on the same record was "grossly inadequate."  The record shows, that on the evidence on motion for change of venue, that the second jury knew the former verdict was one thousand five hundred dollars, and because of prejudice against the appellee no more was awarded, and that something more than the first verdict had to be returned.  In the case as presented, all the elements of "damages to decedent," including suffering for hours, later discussed, the value of his life expectancy, a man thirty-five years old, earning four dollars per day, the damage to the plaintiff, even though affected by her misconduct, were the same as those presented in the first trial, and declared "grossly inadequate." It would reflect on the court's intelligence to cite cases to show a verdict of two thousand dollars was not a proper regard by the jury of the court's mandate, and the action of the circuit judge in setting the verdict aside was clearly responsive to the court's direction on the reversal.

137 Miss.—6.

There is another consideration which is conclusive. While the court refused to decide whether "the conduct of the wife, or the strained relations existing between a man and his wife might not affect the right to recover for some of the elements of damages," and while counsel cite many authorities holding such proof competent, yet the great weight of authority is against such proof, except to the limited extent that the husband and wife are living apart, and therefore less damage by way of loss of companionship is sustained, and except further, in extreme cases, proof that a wife is being supported by another man, and no probability exists of a re-uniting under the marriage relations, is competent to show no dependency. But our statute does not make dependency essential to recovery of the present value of the prospective earnings of decedent. When it is considered that this record shows without dispute that the appellee continued to visit deceased at Belzoni, and he to visit her at Memphis, and they lived as husband and wife, and support, even in limited amount, was contributed by him, and that correspondence looking to a re-uniting which would have followed but for his death, and that the separation was due entirely to misconduct of deceased, the proof admitted was clearly incompetent, and was certainly highly prejudicial. 8 R. C. L. 833; 6 Thompson on Negligence 892; *Ingersoll* v. *Detroit Ry.* (Mich.), 32 L. R. A. (N. S.), and note citing many authorities; *Fogerty* v. *N. P. Ry. Co.,* 1916-C 803.

The rule is settled that unless there has been an abuse by the trial judge, this court will not disturb the giving or refusing of a change of venue. *Stewart* v. *State,* 50 Miss. 587; *Regan* v. *State,* 87 Miss. 422. The application in statutory form, as here presented, supported by oath of plaintiff, presents a *prima-facie* showing. *Magness* v. *State,* 103 Miss. 30. A change of venue should not be denied because the witnesses believed a jury could be found in the county by picking them, and

that owing to the general good character of the people a fair trial could be had. *Anderson* v. *State*, 92 Miss. 656. When a change of venue is acted upon, the court will not look alone to the evidence of the motion, but to the whole trial, and thereupon determine, whether a wrong has been done. *Cheatham* v. *State*, 67 Miss. 335.

The verdict is not excessive. It is useless to cite numerous cases of the amount allowed to stand, as each case must be decided upon its own facts. The proof was ample, and convincing, and the jury believed it, that appellant while in good health, and full enjoyment of his faculties, was, about seven o'clock in the morning, struck on the head, and received injuries which caused his death at one o'clock that day, or six hours later. After the blow, he was carried in an automobile several miles to Belzoni, thence on a train to Yazoo City, and at about one o'clock given, for the first time an anæsthetic, and died upon the operating table. That this man suffered "intense" "excruciating" pain is shown by the testimony of the nurse. That he was conscious, except at intervals, as stated by Dr. Harrison, is shown by the fact that, as testified by Jones and Dr. Harrison he constantly put his hand to his head and complained, and by the fact that he called for the man with whom he lived, "Dad." Even near one o'clock, after six hours of this mental and physical anguish he recognized, the nurse, Miss Horn, whom he had not seen for a year. It is clear the poor fellow knew when he was being carried to the operating table, where he died, and experienced the anguish incident to it. Strangely, it appears that during all this ordeal, no opiate to relieve his suffering was ever given. Can it be said that under all the facts of this case, with its three trials, the verdict and judgment finally rendered should be disturbed?

Present value net earning recoverable. *Telephone Co.* v. *Anderson*, 89 Miss. 732; *Mississippi Oil Co.* v. *Smith*, 95 Miss. 528; *G. & S. I. R. R. Co.* v. *Boone*, 120

Miss. 659; *Hines* v. *Green,* 125 Miss. 476; *L. & N. R. R. Co.* v. *Garnett,* 93 So. 241.

*Mortimer & Sykes,* in reply for appellant.

Referring to appellee's cross-appeal, assigning as error that the trial court erred in including evidence as to the value of the life of the deceased and refusing to instruct the jury that the same was recoverable as a damage to decedent, this contention has been settled against the appellee by the cases of *Hamel* v. *Railroad Co.* and *Alexander* v. *New Deemer Mfg.* Co., cited in the original brief. Nothing could be stronger than the Hamel case unless it is the language of Judge ETHRIDGE in the Alexander case, wherein, in speaking of the next of kin he says that, ''They alone have the right to sue for the value of the life.''

The question presented is, is the brazen and adulterous wife to be put upon the same footing in a court of justice as the wife who is faithful and true, who has comforted her husband in time of sickness and distress and has been a ministering angel to him in adversity? We say most emphatically that she is not and that the weight of authority holds with us on this proposition, and that any holding to the contrary would indeed shock the conscience and hold up the courts of our land to the scathing and bitter ridicule and denunciation. Our statute says that the jury in assessing damages shall award such damages as are just, and we submit that the word ''just'' means just to the dead man as well as just to the parties suing, and nothing could be more unjust than to award such a woman damages under such circumstances.

Counsel says that section 6648, Hemingway's Code, which abolishes the fellow servant doctrine, does not apply to the case at bar. If the court will refer to the report of this case in 89 So. 919, and to the original rec-

ord, it will be seen that Langford was employed by appellant as a log loaderman. That the cause of his injury was that he was assisting in the poling of a car loaded with lumber when a heavy timber, due to improper loading, became loose and fell upon his head crushing his skull, from which injury he died. The timber was loaded by log loadermen and, therefore, by fellow servants of Langford. Langford's death was not due to the poling of. the car, because if the timber had been properly loaded the poling of the car would not have caused it to fall, but his death was caused proximately by the failure to load the timbers properly. Therefore, his death was the result of the negligence of a fellow servant.

Argued orally by *J. A. Sykes* and *Walter Shields,* for appellant, and *J. F. Barbour,* for appellee.

Cook, J., delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Washington county awarding the appellee damages in the· sum of ten thousand dollars for the wrongful death of her former husband Ernest Langford. This suit was originally instituted in the circuit court of Humphreys county, and thereby the appellee sought to recover "all the damages of every kind to the decedent and all damages of every kind" suffered by her as widow, the only party·interested in the suit, and at the first trial there was a judgment for one thousand five hundred dollars, from which both parties appealed to this court. On this appeal the judgment was affirmed as to liability, but it was held that the damages allowed were grossly inadequate, and the cause was reversed on cross-appeal as to the amount of damages, and remanded for a new trial on the question of damages' only, the opinion of the court being reported in 127 Miss.

234, 89 So. 919, 18 A. L. R. 1406. In this opinion the
court expressly reserved a decision of the question' as
to the admissibility of testimony tending to show mis-
conduct on the part of the wife, and also as to whether
the conduct of the wife, or the strained relations exist-
ing between a man and his wife, would affect the right
of the wife to recover for some of the elements of dam-
ages recoverable under the statute in such cases, but
held that it was error to instruct the jury to the effect
that, "in estimating the amount of damages to be
awarded plaintiff they should take into consideration
the marital relations existing between Langford (the
decedent) and the plaintiff at the time of his death and
prior thereto," for the reason that any misconduct of
the appellee could not affect her right to recover "all
damages of every kind to the decedent" as expressly
provided by statute.

Upon the remand of the cause it was again tried on
the question of damages only, and upon testimony sub-
stantially the same as that on the first trial, in so far as
material to the amount of damages suffered by the
decedent and by the appellee, the widow, there was a
verdict of two thousand dollars. A motion to set this
verdict aside on the ground that it was still grossly
inadequate was sustained, and thereupon, the appellee
presented in proper form, supported by her oath, a
motion for a change of venue. At the hearing of this
motion many witnesses testified, and a great mass of
testimony was introduced which we do not deem it
necessary to here set out. This motion was sustained
and the cause transferred to the circuit court of Wash-
ington county for trial.

When the cause came on for trial in the Washington
county court the appellee filed a motion to be permitted
to amend her declaration "so as to strike therefrom all
claim for damages suffered by the plaintiff as the wife
because of the death of the said decedent, and to dismiss

as to any claim for such damages and be permitted to prosecute this cause solely as to any and all damages suffered by the said decedent, and which are recoverable by law.''

On the trial of the issue as made by the amended declaration, the appellee offered testimony to show the nature of the injury inflicted upon the deceased, his condition from the time of his injury until his death about six hours later, and the pain and suffering endured by him during that period. She also offered to prove his life expectancy and the elements from which the present value thereof might be determined, but this evidence was excluded, and the cause was submitted to the jury under instructions which limited the right of recovery to such damages as were sustained by the decedent by reason of his mental and physical pain and suffering between the time of his injury and the time of his death. Under these instructions the jury returned a verdict of ten thousand dollars, and both parties have again prosecuted an appeal.

On the direct appeal three assignments of error are pressed: First, that the court erred in setting aside the verdict of two thousand dollars on the ground that it was grossly inadequate; second, that the court erred in granting the motion for a change of venue; and, third, that the verdict rendered in the Washington county court is grossly excessive.

There is no merit in the first contention. The suit as it then stood was for all damages of every kind to the decedent, and all damages suffered by the appellee by reason of the death of her husband. The testimony as to the pain and suffering, the age, health, and earnings of the deceased was substantially the same at the second trial as at the first; and, conceding for the purpose of this decision the correctness of appellant's contention that the testimony tending to show improper conduct on the part of the appellee, and the strained marital

relations existing between the deceased and the appellee, was admissible as affecting the damages recoverable by her as widow, we think that under any view of the evidence the verdict for two thousand dollars must be held to be grossly inadequate.

The next assignment is based upon the action of the court in granting a change of venue, but we do not think this was error. Not only was there no abuse of discretion in granting this motion, but, on the contrary, the great weight of the testimony supports the finding of the court that, on account of prejudice existing in the public mind against the appellee, she could not obtain a fair and impartial trial in that county.

The final and most serious contention of the appellant is that the verdict from which this appeal was prosecuted is grossly excessive, and this involves a consideration of the testimony as to the nature and extent of the injury inflicted upon the decedent, and his condition, and the mental suffering and physical pain endured by him from the time of his injury until his death. By the instructions granted the defendant the court limited the right of recovery to damages for the mental and physical pain and suffering of the deceased between the time of his injury and the time of his death. The appellee challenges the correctness of the instructions so limiting her right of recovery, but also contends that if it be conceded that the instructions were correct, still the testimony was sufficient to sustain a verdict of ten thousand dollars for mental suffering and physical pain alone.

The testimony shows that the deceased was injured some time between seven and nine o'clock in the morning, and lived until about one o'clock in the afternoon of the same day. He was injured by being struck on the head by a piece of timber which fell from a flat car, causing a fracture of his skull and bleeding from the ear, mouth, and nose. Immediately after the injury he

was placed in an outomobile and carried into the town
of Belzoni, about three-fourths of a mile, and was there
treated by a physician.   This physician directed that he
be placed on a cot and carried on a train which was then
due, to a hospital in Yazoo City.   He arrived at the
hospital between eleven thirty and twelve o'clock, and
was immediately carried to the operating room where
he was examined by surgeons and prepared for an
operation, an anæsthetic being given.   The physician
who first saw the injured man, and who remained with
him until he died, testified that when he first saw the
injured man he was in an unconscious or semiconscious
condition, and while the effect of his entire testimony
undoubtedly is that he remained in this condition a large
part of the time until his death, still he testified that
there were intervals of apparent consciousness, and that
during these periods he gave evidences of intense suffer-
ing.   There was testimony that he called the name of
the man with whom he boarded, and that when he arrived
at the hospital he apparently recognized a nurse who
had attended him during a former illness.   There was
testimony that during these periods of apparent con-
sciousness he gave exclamations and other evidences
which indicated that he was suffering intense pain, and
we think there was sufficient testimony from which the
jury might find that the injured man had periods of
consciousness, and if so, it follows, as shown by the evi-
dence, that he suffered intense pain during these
periods.

We think, however, that, considering the whole evi-
dence and the inferences and conclusions flowing there-
from, that the verdict was grossly excessive, and it may
have been induced by an instruction granted the appel-
lee which charged the jury that it might return a verdict
for any sum which it might determine from the evidence
to be just, ''not to exceed forty thousand dollars, the
sum named in the declaration.   Forty thousand dollars

is largely in excess of any amount for which a verdict should be upheld, and in the case of *A. & V. Ry. Co.* v. *Dennis*, 128 Miss., 298, 91 So., 4, it was held that an instruction of this character is prejudicial when the verdict returned in response to it is excessive.

On the cross-appeal, however, the appellee contends that the court below erred in sustaining objections to testimony offered by her to show the present net value of the life expectancy of the deceased, and in limiting the recovery to damages for mental suffering and physical pain, and that, in the event it should be held that the damages allowed for pain and suffering were excessive, the evidence of the present value of the life expectancy, which was excluded by the court below, should be considered by this court to sustain the verdict returned. It is the province of the jury to pass upon all the elements of damages properly recoverable, and since this evidence has never been considered by the jury, the cause must be remanded for a new trial if it shall be held that this evidence was admissible. This brings up for consideration the question of whether the present value of the life expectancy of the deceased is recoverable as an element of "damages of every kind to the decedent."

The right of the appellant to maintain this action is conferred by, and the damages recoverable are measured by, the provisions of chapter 214, Laws of 1914 (section 501, Hemingway's Code). This statute provides that there shall be but one suit for the same death which shall inure to the benefit of all parties concerned, and that in such suit "the party or parties suing shall recover such damages as the jury may determine to be just, taking into consideration all the damages of every kind . . . to any and all parties interested in the suit." The statute is based upon Lord Campbell's Act, which first appeared in our law in the Code of 1857, and keeping in mind the fact that, by the amended declara-

tion in this cause, all damages were eliminated except damages to the decedent, it will be helpful to trace the development of this statute, and to consider the decisions of the court construing the former statutes, and determining the damages recoverable thereunder for damages to the decedent.

Under section 1513, Code of 1880, the personal representative of a deceased person was authorized to prosecute to final judgment any suit instituted by the deceased during his lifetime, and under sections 2078 and 2079 of that Code the personal representative was authorized to institute and prosecute to final judgment any personal action which might have been commenced and prosecuted by the intestate if he had survived, while section 1510 authorized the kindred of a deceased person to sue for and recover damages occasioned by injuries resulting in such death. Under these statutes the court recognized that in cases of death resulting from wrongful injury, there are two separate and distinct elements of damages, the damages which the decedent sustained, and the damages sustained by the next of kin, and that these damages could only be recovered by separate suits, one by the personal representative and the other by the kindred named in the statute. Under these statutes damages sustained by the decedent were only recoverable by the personal representative, and the value of the life expectancy was not an element of recoverable damages, and it was so held in the cases of *Railroad Co.* v. *Phillips,* 64 Miss. 693, 2 So. 538, and *Railroad Co.* v. *Pendergrass,* 69 Miss. 430, 12 So. 954. In the Phillips case the court said:

"The right of the administratrix to sue and recover whatever damages her intestate might recover, if living, is indisputable. . . . It is manifest that the death of [the decedent] did not destroy the right of action, for, had he commenced an action, it would have survived by section 1513, as stated above, and section 2079 plainly

provides for the institution of such an action by the personal representative. Section 1510 provides for an action to recover for the death of a person, and it is entirely distinct from and independent of an action by the personal representative. They may coexist, but have no connection.''

In the case of *Railroad Co.* v. *Pendergrass, supra,* wherein the administratrix sued for injuries to her intestate resulting in instantaneous death, the court in discussing these statutes said:

''The object of the statute is certain. At common law, actions for the recovery of damages for personal injuries abated with the death of the person injured; the statute referred to was designed to cause to survive to the personal representative any right of personal action which the deceased might have commenced or prosecuted if living. . . . The sole purpose, and the manifest purpose, is to save to personal representatives the right to begin and carry on such personal actions as the deceased might have begun and carried on if he had not died. The evil of the common law was that all personal actions died with the person; the remedy of the statute is to cause the action, or the right of action, to survive to the personal representative. Whatever suit was maintainable by the deceased, shall be held maintainable by the personal representatives of the deceased. But the deceased never had any personal action which could abate at common law where the injury causing death, and the death itself were simultaneous. It is impossible to conceive, at common law, of a right of action for injuries to be begun and prosecuted by one who died instantaneously on being injured. . . . We are of the opinion that the personal representative has no right of personal action where the deceased never had such right, and that, where death was simultaneous with injury, it is impossible, to the healthy mind, to even conceive of a right of action in the man instantaneously

killed. In such case, all recoverable damages must be sought by the kindred who have sustained loss, and the mere personal representative can have no standing in court."

To the same effect is the holding of the court in the cases *Beckman* v. *Railroad Co.* (Miss.), 12 So. 956, and *McVey* v. *Railroad Co.*, 73 Miss. 493, 19 So. 209, and from these cases it is clear that under the statutes as they then existed only the personal representative could recover for damages to the decedent, and that the value of the life expectancy was not recoverable as an element of such damages, but it could only be recovered by the next of kin named in the statute as an element of damages sustained by them.

Section 1510 of the Code of 1880 was amended in an immaterial respect by chapter 62 of the Laws of 1884, and as amended appears in the Code of 1892 as section 663. This section was in turn amended by chapter 86, Laws of 1896, and chapter 65, Laws of 1898, and as amended appears as section 721 of the Code of 1906.

Under this section all causes of action which might have theretofore existed for any injuries whereby the death of any party was produced were united in one suit, and it was provided that the designated class of legal representatives might recover, notwithstanding the death, and the fact that death was instantaneous should, in no case, affect the right of recovery. It further provided that if there were no next of kin at all, then the damages should go to the legal representatives, subject to debts and general distribution, and that in such case the personal representative might, within the limitation of one year prescribed, sue for and recover such damages on the same terms as were prescribed in the section for recovery by the next of kin, and the fact that the deceased was instantly killed should not affect the right of the legal representatives to recover. Under this section a suit by the personal repre-

sentative could not be brought conjointly with a suit by the widow or other legal representative, but could only be brought when there were no next of kin.

This section was amended by chapter 167, Laws of 1908, so as to abolish the limitation of one year in which to bring suit, and was further amended by chapter 214 of the Laws of 1914, so as to remove all limitation upon the right of the personal representatives to maintain the suit. As amended, this section appears as section 501 of Hemingway's Code, and it provides, in part, as follows:

"The action for such damages may be brought in the name of the personal representative of the deceased person, for the benefit of all persons entitled under the law to recover, or by the widow," etc., "or all parties interested may join in the suit, and there shall be but one suit for the same death which shall ensue for the benefit of all parties concerned. . . . In such action the party or parties suing shall recover such damages as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit."

This statute further provides that the damages recovered under the provisions thereof shall not be subject to the debts and liabilities of the deceased if there are any of the designated next of kin, but in case there are no such next of kin, then the damages are recoverable by the personal representative for the benefit of the legal representatives and creditors of the deceased.

Under these various amendments of this statute since the Code of 1880, the right of the personal representative of the deceased to maintain the suit has been continually broadened and extended, and the list of kindred who are entitled to sue and recover has been extended, and under the statute as it now exists either the personal representative or the next of kin may recover in

one suit all damages to the decedent and to all parties interested in the suit, while formerly, to recover all these damages, it was necessary that two suits be maintained, one by the personal representative for damages to the decedent, and one by the kindred who had sustained loss, but there have been no new elements of recoverable damages to the decedent created by these amendments.

The present statute unites in one suit all causes of action which formerly existed for injuries causing the death of any party, and provides that the fact that death was instantaneous shall, in no case, affect the right of recovery, but it does affect the amount of the recovery as some of the usual elements of damages are necessarily absent in case of instant death. The right of recovery, however, remains unimpaired in such case, and the suit may be maintained by the designated kindred, if there be any such, or by the personal representative of the deceased person, for the benefit of all persons entitled under the law to recover, and there may be recovered such damages as are allowed by the statute, and as have accrued, but as said by the court in the case of *New Deemer Mfg. Co.* v. *Alexander,* 122 Miss. 859, 85 So. 104, a case in which death was instantaneous, ''the rights other than for loss of companionship, protection, and society of all the parties is rooted in the earnings of the decedent during his expectancy,'' and we think that these earnings are recoverable as damages to the parties interested, and not as damages to the decedent. Consequently, we do not think that the present net value of the life expectancy is recoverable where, as here, the action is limited to damages to the decedent, and that the court did not commit error in the present case in excluding the evidence offered to show this expectancy.

In the case of *Cumberland T. & T. Co.* v. *Anderson,* 89 Miss. 732, 41 So. 263, Judge WHITFIELD, in itemizing the damages, which are recoverable under this statute, used

language which appears to be in conflict with the views herein expressed, but in the case of *New Deemer Mfg. Co.* v. *Alexander,* 122 Miss. 859, 85 So. 104, the court criticised this itemization of damages by Judge WHITFIELD, and held that it resulted in pyramiding the damages, and while, in the Alexander case, the court did not have under consideration the question now involved, it held that the language of Judge WHITFIELD setting forth and itemizing the damages recoverable, "while persuasive, was nothing more than an expression of his views not necessary to the decision of the case."

If the appellee will enter a *remittitur* of five thousand dollars, the judgment of the court below will be affirmed for five thousand dollars; otherwise, it will be reversed and remanded for a new trial on the question of damages only.

*Affirmed, with remittitur.*

ETHRIDGE, J.

I am impelled to dissent from the majority opinion in this case for the reason that in my opinion the decision runs counter to the practice and decisions of this court since Laws 1898, chapter 65, went into effect. Under the present law (section 501, Hemingway's Code; chapter 214, Laws of 1914) it is distinctly provided in the first part of the section.

"Whenever the death of any person shall be caused by any real wrongful or negligent act, or omission, or by such unsafe machinery, way or appliances as would, if death had not ensued, have entitled the party injured, or damaged thereby, to maintain an action and recover damages in respect thereof, and such deceased persons shall have left a widow or children, or both, or husband, or father, or mother, or sister, or brother, the person or corporation, or both, that would have been liable if death had not ensued, and the representatives of such person shall be liable for damages, notwithstanding the

death, and the fact that death, was instantaneous shall, in no case, affect the right of recovery. . .. . In such action the party or parties suing shall recover such damages as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit.  This section shall apply to all personal injuries of servants and employees received in the service or business of the master or employer, where such injuries result in death. . . . If the deceased have neither husband, or wife, or children, or father, or mother, or sister, or brother, then the damages shall go to the legal representative, subject to debts and general distribution, and the fact that the deceased was instantly killed shall not affect the right of the legal representative to recover.''

A careful reading of the statute, it seems to me, discloses the purpose of the legislature to change the rule announced in the opinions quoted in the main opinion, especially the case of *I. C. R. Co.* v. *Pendergrass,* 69 Miss. 425, 12 So. 954, and *McVey* v. *I. C. R. Co.,* 73 Miss. 487, 19 So. 209, and *Beckman* v. *Ga. Pac. Ry. Co.* (Miss.), 12 So. 956, which decisions construed the statute as it existed prior to the Act of 1898 above referred to. It is difficult to understand the reasoning of the majority opinion in view of the fact that if there is entire failure of the parties related to the deceased named in the statute:

''Then the damages shall go to the legal representative, subject to debts and general distribution, and the fact that the deceased was instantly killed shall not affect the right of the legal representative to recover.''

The cases relied on in the majority opinion are predicated upon the fact that there was no injury to the deceased where death was instantaneous.  The present statute clearly intends to change the law because in each part of the statute it is provided that the fact that death

is instantaneous shall not affect the right to recover.
As to the relatives named who are given the right to
sue, they have the right not only to recover their dam-
ages where death is instantaneous, but also to recover
the damages to the decedent in that case. The latter
part of the statute expressly carries out the idea that
the deceased's expectancy is recoverable, because where
death is instantaneous and he has no dependents or
immediate members of his family, the damages are to
be recovered for general distribution, and are subject to
administration; clearly meaning that if none of the
relatives named in the statute exist that the personal
or legal representative shall sue for and collect the dam-
ages, subject to the right of creditors, and, after the
creditors are satisfied, to distribute the balance amongst
the heirs at law, whoever they may be, and however
distant they may be. If there are no creditors the action
remains in the legal representative subject to distribu-
tion amongst his heirs at law, however remote they may
be.

It would seem in the absence of any decision that this
language is too clear to be misunderstood, but in
numerous cases the expectancy has been recovered and
the judgment affirmed by this court, and I thought it
was universally understood that the expectancy of the
deceased was recoverable by the parties named in the
statute regardless of their own expectancies. And nam-
ing the damages recoverable in the case of *Cumberland
Tel. & Tel. Co.* v. *Anderson,* 89 Miss. 732, at page 744,
41 So. 263, the court expressly held that, in addition to
such damages named to the parents, they could recover
''also whatever sum the son might have recovered as
the present value of his own expectancy.'' This holding
was in no wise disturbed in the case of *New Deemer Mfg.
Co.* v. *Alexander,* 122 Miss. 859, 85 So. 104, but we
simply modified the opinion in the Anderson case, *supra,*
by holding that the necessary living expenses of the

deceased during his expectancy must be deducted from the expectancy as there was no property from which any gift or income could be derived other than the earning power of the deceased.   That case held that the value of the expectancy, less the said necessary living expenses, was a recoverable element.   In *G. & S. I. R. Co.* v. *Boone,* 120 Miss. 632, 82 So. 335, it was expressly held in the plainest language that the expectancy of the deceased was a recoverable element, additional to the loss of association, etc. · The same principle was recognized in *Hines, Agent,* v. *Green,* 125 Miss. 476, 87 So. 649.   The net expectancy less the necessary living expenses was there stated to be the basis of the recovery, because as in the Alexander case, *supra,* it was explained that the cost of living must be taken from the net expectancy during the period of the expectancy, and that the plaintiffs were entitled to recover the value of such expectancy as damages for the wrongful death.

In *L. & N. R. R. Co.* v. *Garnett,* 129 Miss. 795, 93 So. 241, this rule, was again announced.   In the Garnett case the suit was brought by the father and mother and brothers of the deceased who died leaving neither wife nor children nor descendants of children.   The court announced at page 807 and 808 (93 So. 243), that the measure of recovery is the net present cash value of what the deceased would have earned during his life expectancy, and not the gross amount which the instruction authorized the jury to find.   In other words, in this last case was presented exactly a case where the expectancy was the thing being sued for.   It does not appear whether the brothers were older or younger than the deceased, but certainly the father and mother were older, and the same right of action would have existed in a legal representative had there been none of the relatives mentioned in the statute.   The legal representative would have sued for and recovered the life expectancy.   As stated in the Alexander case, *supra,*

where the deceased has no property from which expected gifts and support could be received the recovery is rooted in the expectancy of the deceased. If the deceased had no injury in the case of instant death, there would have been nothing for the legal representative to sue for or recover, and it would make the language of the legislature giving the right regardless of the fact that death was instantaneous absurd and nonsensical. How could a legal representative maintain an action where death was instantaneous and there was no suffering, if there were no expectancy to be sued for? It would seem to be sounder reasoning to' say that the injury to the deceased is the expectancy, and the pain and suffering and expenses incurred by him in procuring medical treatment, etc., and that the right of the other relatives, or their damages, would be loss of association, etc., and the loss of the right of support. In the absence of a provision in the statute giving them the right to sue for the injuries to the deceased, they could have only sued for such rights as they would have had in the life of the deceased during their own lives if their expectancy were less than that of the deceased.

The majority opinion, it seems to me, entirely ignores the latter clause ingrafted on the statute by chapter 65, Laws of 1898. The opinion is in error also in stating that under the death statutes in the Code of 1906 and prior acts, all causes of action which might have theretofore existed for any injuries, whereby the death of the party was produced, were united in one suit; and that it was provided that the designated class of representatives might recover notwithstanding the death in no case affects the recovery. The action of the next of kin and the personal representative remained separate until the passage of the law of 1914 as will appear from the case of *Hamel* v. *Southern Ry. Co.*, 108 Miss. 172, 66 So. 426, 809.

It seems to me it is a perfectly reasonable thing for the legislature to provide by law that where one person

wrongfully kills another that he was to be liable for the value of the life so destroyed, and it was the purpose of enacting this statute to protect human life by imposing such responsibility upon the person who wrongfully took it. The statute is beneficial and remedial, and calculated to preserve human life, and should not be pared away by construction.

HOLDEN, J., joins in this dissent.