Winstead *v.* Hall

No. 43340          February 1, 1965          171 So. 2d 354

*Ross & Ross,* Clarksdale; *E. L. Schieffler,* West Helena, Ark., for appellant.

*McClure, Fant & McClure,* Sardis, for appellee.

ETHRIDGE, J.

The only question in this case is whether appellant's jury verdict of $1,000 for the negligently caused death of her father is so grossly inadequate as to require a new trial on damages. We hold it is.

James T. Ray, Sr. was killed on June 12, 1963 in a motor vehicle collision on State Highway 6 between Batesville and Marks. The highway runs east and west, and Finn was driving west in his log truck, between 6:00 and 7:00 p.m. Ray was in the middle seat of the truck, and Warren was on the right side. Finn was driving at a moderate rate of speed. The version of plaintiff-appellant, Mrs. Winstead, is that after passing a store, Finn intended to make a left turn to the south side of the road in order to leave Warren at his home. About halfway between the store and the Warren house, Finn saw from his sideview mirror the automobile of Benjamin Hall, appellee, approaching. It was then 150 to 200 yards

to the rear. Finn gave a hand signal for a left turn, but either before or at the time he started to turn left, while still in his proper lane of traffic, or at the most while the front wheels were on the center line, Finn's truck was struck from the rear by Hall's automobile, which he was driving at an excessive rate of speed, between 75 to 90 miles per hour. There is conflict as to the position of the two vehicles on the highway at the time of impact, but it is manifest, as the jury found, that Hall's automobile was moving at a high rate of speed. It hit the rear of the log truck, knocking it on the south side of the highway.

Hall's version was that the Finn truck pulled off of the highway onto the right shoulder, and then with no signal turned abruptly to the left and into the path of his car. He was attempting to pass in his left lane of traffic, and was driving 50 miles per hour. These conflicts in the evidence were issues for the jury, which found for the plaintiff.

After careful examination of the record, we conclude that the verdict of $1,000 for Ray's death in the collision was so grossly inadequate as to evince bias, passion and prejudice by the jury, and to require a new trial on the issue of damages only. We affirm as to liability.

Appellee relies principally on the cross-examination of Finn, in which Finn stated that he saw in his side-view mirror the Hall car approaching 150 to 200 yards behind, and gave an arm signal to make a left turn. He asserted that Ray "was a back-seat driver," and when Finn first saw the car, Ray said, "There is one coming, but it's way back"; that Ray told him it was clear to turn. At the time of the collision Finn said he was not looking in the mirror. Finn further stated that, although Ray told him the way was clear and he could make the turn, Ray did not tell him what to do: "No, I wasn't

paying any attention to what he said. I heard him, but I wasn't taking his advice. I had already seen the car."

■■ Appellee did not ask for or receive an instruction on contributory negligence. The jury had the right to apply the comparative negligence statute without an instruction to that effect. Gilliam v. Sykes, 216 Miss. 54, 61 So. 2d 672 (1952); Miss. Code Ann. §§ 1454, 1455 (1956). ■■ However, we do not think that this testimony justified the jury in concluding that practically all of the negligence which caused the collision was chargeable to decedent, and in thus reducing the damages to the extent which it did. The preponderance of the evidence shows that the principal cause of the accident, as the jury found, was the high speed at which Hall was driving.

■■ The funeral bill was $495 and the doctor's bill was $10, or a total of $505 actual expenditures. Ray experienced conscious and extreme pain and suffering following the accident (before he was given a narcotic) for between an hour to two hours. As to the present net cash value of the life of the deceased at the time of his death, Ray was 63 years of age, in good health, with a life expectancy of 13.8 years. He was a painter, at the time of the collision was working as a logging helper, and for several years prior thereto had worked in a fruit orchard in Florida. Appellant said that while he was working at his trade, Ray earned from $250 to $300 per month. Although the evidence on earnings is not as adequate as it should be, certainly the record showed that Ray was able to and did earn wages while either working as a painter, a laborer in a fruit orchard, or otherwise. As to loss of society and companionship, both Mrs. Winstead, the daughter, and her mother, divorced from Ray, testified that there was a close, affectionate relationship between plaintiff and her father, they communicated by letter or telephone at frequent intervals, and he visited her from time to time.

All of these and other factors show that the verdict of $1,000 was grossly inadequate. It was highly disproportionate to any contributory negligence attributable to Ray. City of Corinth v. Gilmore, 236 Miss. 296, 110 So. 2d 606 (1959); Boroughs v. Oliver, 217 Miss. 280, 85 So. 2d 191 (1956); Lee v. Reynolds, 190 Miss. 692, 1 So. 2d 487 (1941); Gibson v. A. T. Wineman & Sons, 141 Miss. 573, 106 So. 826 (1926); Belzoni Hardwood Co. v. Cinquimani, 137 Miss. 72, 102 So. 470 (1924); Belzoni Hardwood Lumber Co. v. Langford, 127 Miss. 234, 89 So. 919 (1921). Upon a retrial of this case on the issue of damages, all facts may be presented to the jury on the question of negligence of all parties, including the deceased, and the jury will have the right to apportion damages under the comparative negligence statute. Vaughan v. Bollis, 221 Miss. 589, 73 So. 2d 160 (1954).

Affirmed on liability, and reversed and remanded on the issue of damages only.

*Lee, C. J., and Rodgers, Patterson and Inzer, JJ.,* concur.